UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARTER COMMUNICATIONS, INC.,

        Petitioner,

– v –

LYNDA M. DERFERT,

        Respondent,

– and –

NEW YORK STATE DIVISION OF HUMAN
RIGHTS,

        Respondent-Intervenor.

Case 1:20-cv-00915-GWC

---

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT-INTERVENOR'S
MOTION TO DISMISS PETITIONER'S SECOND CLAIM FOR INJUNCTIVE RELIEF**

Erin Sobkowski
New York State Division of Human Rights
Office of General Counsel
65 Court Street, Suite 506
Buffalo, New York 14202
(716) 847-7679

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................iii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..................................................................................................................1

ARGUMENT ........................................................................................................................3

    I.      NEW YORK STATE DIVISION OF HUMAN RIGHTS IS NOT
           A PARTY TO THE ARBITRATION AGREEMENT BETWEEN
           CHARTER COMMUNICATIONS. INC. AND LYNDA
           DERFERT AND HAS THE POWER TO PROCEED ON THE
           DERFERT COMPLAINT ...................................................................................3

    II.     THE NYSHRL EMPOWERS NYSDHR TO PROSECUTE AND
           ADJUDICATE COMPLAINTS THAT HAVE BEEN ISSUED A
           PROBABLE CAUSE DETERMINATION ......................................................12

    III.   CHARTER DOES NOT SATISFY THE REQUIREMENTS FOR
           GRANTING A PERMANENT INJUNCTION .............................................15

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987)..........................15

*Cent. Rabbinical Cong. of U.S. & Can. v.
N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183 (2d Cir. 2014) .....15

*Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324 (S.D.N.Y. 2003) ......11

*E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*,
273 F Supp 2d 260 (E.D.N.Y.2003) ............................................................10

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002).......................................4-18

*Gilmer v Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991).....................4, 10, 16

*Joule, Inc. v. Simmons*, 459 Mass. 88, 944 N.E.2d 143 (Mass. 2011)..........4, 7, 9, 14

*Ladenburg Thalmann & Co. v. Matty*, 36 Misc. 3d 1243(A),
960 N.Y.S.2d 50 (Sup. Ct. New York Co. 2012) .........................................4, 10, 11

*Marciano v DCH Auto Grp*, 14 F. Supp. 3d 322 (S.D.N.Y. 2014)...............11

*Matter of Club Swamp Annex. V. White*, 167 A.D.2d 400,
561 N.Y.S. 2d 609 (2nd Dept 1990) ............................................................18

*Matter of Hurwitz v. New York City Commission on Human Rights*,
142 Misc.2d 214, 217, 535 N.Y.S.2d 1007
(Sup. Ct. New York Co. 1988) ..................................................................18

*Matter of Louis Harris & Associates v. DeLeon*,
854. N.Y.2d 698, 704, 646 N.E.2d 438 (N.Y. Ct. of App. 1994)................18

*People of the State of New York v. Coventry First, LLC*,
13 N.Y.3d 108, 915 N.E.2d 616 (2009)........................................................4, 8-11

*Perfect Building Maintenance v. Ai Ho and NYS Div. of Human Rights*,
Index No. 100253/2014 (Supreme Court, New York County 2014)............11

*Preston v. Ferrer*, 552 U.S. 346 (2008).......................................................12-15

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010)..........11

*Red Earth LLC v. United States*, 657 F.3d 128, 143 (2d Cir. 2011)..............15

*Rent-A-Center, Inc. v. Iowa Civil Rights Com'n*,
843 N.W.2d 727 (2014) ........................................................................4, 9, 14

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ...........................................16

*Sec. LLC v Prowse*, 20CV217 (JGK), 2
020 WL 433859 (S.D.N.Y. 2020)...............................................................15

*Wenchun Zheng v Gen. Electric Co.*,
No. 115 CV 1232 TJM CFH, 2016 WL 11605144
(N.D.N.Y. Aug. 5, 2016) .............................................................................11

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................16

**Statutes**

N.Y. Exec. L. §§ 290 et seq ...........................................................................2

N.Y. Exec. L. § 290.3 ................................................................................5, 17

N.Y. Exec. L.  § 295 ................................................................................11, 17

N.Y. Exec. L.  §295.6(a) .................................................................................6

N.Y. Exec. L.  §295.6(b) .................................................................................6

N.Y. Exec. L. §296.16 .....................................................................................2

N.Y. Exec. L. § 297(4)(a) ...........................................................................7, 18

N.Y. Exec. L § 297(4)(c) ...............................................................................18

N.Y. Exec. L. § 297.9 ...................................................................7, 11, 13, 18

N.Y. Exec. L. § 298 .......................................................................................13

42 U.S.C. § 2000e-8(b)....................................................................................6

## PRELIMINARY STATEMENT

Petitioner, Charter Communications, Inc., ("Charter") moves for permanent injunctive relief pursuant to Federal Rules of Civil Procedure 65, enjoining Respondent, Lynda M. Derfert ("Derfert"), from proceeding with New York State Division of Human Rights ("NYSDHR") Case No. 10195081, *New York State Division of Human Rights on the Complaint of Lynda M. Derfert v. Charter Communications, Inc*. pursuant to an alleged arbitration agreement between the parties.

By Order of this Court, NYSDHR was permitted to intervene in this litigation for the purpose of opposing an order which would have the effect of interfering with the agency's ability to conduct an administrative hearing on the merits of Derfert's complaint.

By seeking to enjoin Derfert from proceeding with NYSDHR, Charter attempts to interfere with NYSDHR's independent authority to enforce the New York State Human Rights Law. Regardless of whether there is an agreement between an employer and an employee to arbitrate employment-related disputes, NYSDHR is not barred from investigating or enforcing the Human Rights Law on the complaint of Derfert. This includes  pursuing victim specific relief, such as backpay and other damages.  Further, Charter is not entitled to permanent injunctive relief because the public interest weighs against an injunction in this matter.

## BACKGROUND

Lynda Derfert filed a verified complaint with NYSDHR on June 11, 2018.  She alleged unlawful discriminatory practices in relation to employment because of arrest record and conviction record.  (Sobkowski Decl. ¶29, Ex. 2).

As relevant here, pursuant to the New York State Human Rights Law ("NYSHRL")N.Y.

Exec. L. §§ 290 et seq., an employer cannot make any inquiry about, nor take any adverse action upon, a person based on a prior arrest resolved in a person's favor. (Sobkowski Decl. ¶¶ 37-39, N.Y. Exec. L. § 296.16).  A prior arrest resolved in a person's favor includes any charges that are dismissed after an Adjournment in Contemplation of Dismissal.  (Id.)

Derfert applied for a Customer Care position with Charter, a job that paid $13.05 per hour.  She was selected for an interview and was offered the position.  Derfert was instructed to to complete pre-hire activities online.  On October 17, 2017, she completed the information related to a required criminal background check on and acknowledged various polices and agreements, including an agreement to arbitrate pre-employment disputes. (Sobkowski Decl. ¶30-33,  Ex.2; Pet. Fries Decl.¶¶14-15, 19).

Charter rescinded the job offer on November 13, 2017. (Sobkowski Decl., ¶34, Ex. 2., Pet. Fries Decl.¶20).

The background check revealed a 1998 Class E felony conviction for attempted robbery, which complainant voluntarily disclosed, and a 2014 Class A misdemeanor conviction for petit larceny, which she had not disclosed. Charter states it did not consider the felony conviction as it was more than 7 years old.  However, Charter asserts that it was "compelled" to rescind its employment offer to complainant due to her failure to disclose the 2014 petit larceny conviction. (Sobkowski Decl.,  Ex.3).

In fact, the petit larceny charge resulted in a dismissal, not a conviction.  In accordance with N.Y. Exec. L. § 296.16, such a charge would not be subject to be inquiry or adverse action by a prospective employer.   (Sobkowski Decl. ¶38-39).

In her NYSDHR complaint, Derfert alleges she has attempted to apply for employment with Charter for at least two different positions on 11/9/17, 12/3/17, 1/10/18 and 1/5/18, 2/5/18,

3/16/18 and 3/28/18.  Each time she was unable to move forward in the selection process.

Charter states Derfert disqualified for the subsequent positions applied for due to recently failing

the background check. (Sobkowski Decl, Ex. 2).  Charter has not suggested that these subsequent

attempts to apply were also subject to the agreement to arbitrate entered into on or around

10/17/17, which concerned her application for employment on 09/19/17. (Sobkowski Decl. ¶42).

After investigation of the administrative complaint, NYSDHR determined that it had

jurisdiction over the matter and that "probable cause exists to believe that [Charter] has engaged

in or is engaging in the unlawful discriminatory practice complained of.  Pursuant to the Human

Rights Law, this matter is recommended for public hearing." (Sobkowski Decl. ¶43, Exs. 3, 4.. ).

Only after NYSDHR issued a determination finding probable cause to believe Charter

engaged in unlawful discriminatory conduct and referred the matter to public hearing, did it

demand Derfert withdraw her NYSDHR complaint.  (Pet.'s MOL, p.4, Schwallie Decl., Ex. 6).

Charter served Derfert with a Summons and Complaint in the instant litigation and demanded

she "withdraw" the NYSHDR complaint. (Sobkowski Decl. ¶8; Pet. Schwallie Decl., Exh. 6).

## ARGUMENT

I.  **NEW YORK STATE DIVISION OF HUMAN RIGHTS IS NOT A PARTY TO THE ARBITRATION AGREEMENT BETWEEN CHARTER COMMUNICATIONS. INC. AND LYNDA DERFERT AND HAS THE POWER TO PROCEED ON THE DERFERT COMPLAINT**

Derfert is a party to an agreement to arbitrate employment and pre-employment related

claims, including claims brought under the New York State Human Rights Law, NY Executive

Law, Article 15.  Through its Petition, Charter seeks to have this Court "bar [Derfert] from

pursuing the adjudication of her discrimination claim outside the agreed upon arbitral forum."
(Pet's MOL, p.1, Pet. p. 7, ¶ ii).

Charter contends that its arbitration agreement with Derfert permits her to file a claim
with NYSDHR and have NYSDHR investigate that claim but the agreement prohibits
adjudication of the claim outside the arbitral forum.

If Derfert is a party to an arbitration agreement that clearly requires applicants to arbitrate
claims arising under the Human Rights Law, she may be personally obligated to have her claims
heard in an arbitral forum. *Gilmer v Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26-27 (1991).
However, Charter errs in asserting the terms of the arbitration agreement prohibit NYSDHR
from enforcing Derfert's complaint with the agency. NYSDHR is not a party to any agreement
to arbitrate claims between Charter and Derfert.

A government agency or body empowered by statute to enforce anti-discrimination laws
concerning an individual complainant cannot be stopped from doing so even if that complainant,
must submit her own claims to arbitration pursuant to an agreement to which the agency is not a
signatory. *See*, *EEOC v. Waffle House, Inc*., 534 U.S. 279 (2002), *People of the State of New
York v. Coventry First, LLC*, 13 N.Y.3d 108, 915 N.E.2d 616 (2009), *Ladenburg Thalmann &
Co. v. Matty*, 36 Misc. 3d 1243(A), 960 N.Y.S.2d 50 (Sup. Ct. New York Co. 2012), *Perfect
Building Maintenance v. Ai Ho and New York State Division of Human Rights*, Index No.
100253/2014 (Supreme Court, New York County 2014), *Joule, Inc. v. Simmons*, 459 Mass. 88,
944 N.E.2d 143 (Mass. 2011), *Rent-A-Center, Inc. v. Iowa Civil Rights Com'n*, 843 N.W.2d 727
(2014).

In *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), the United States Supreme Court held that although an employer and employee had entered into a valid agreement to arbitrate all claims, the EEOC, as a non-party to the agreement, could not be compelled to arbitrate its complaint nor was it barred from pursuing litigation on behalf of the charging party to pursue reinstatement, backpay and other damages. *Id*. at 280.

The complainant in *Waffle House* was an employee who had been fired after having a seizure at work. Waffle House required all employees to sign an agreement requiring employment disputes to be settled by binding arbitration. After his termination, the complainant filed a complaint with the EEOC alleging disability discrimination but never filed for arbitration. After investigation and failed conciliation efforts, the EEOC filed an enforcement suit in federal district court, alleging that respondent's employment practices, including the employee's discharge "because of his disability," violated the Americans with Disabilities Act. *Id.* at 756.

The Supreme Court held

> whenever the EEOC chooses . . . to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief. To hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function.

*Id*. at 295-296.

Like the EEOC, the Division was created to vindicate the public interest by eliminating and preventing unlawful discrimination in employment, and no agreement between private parties can deprive NYSDHR of its independent statutory authority to investigate and act upon any complaints of discrimination. *See* N.Y. Exec. L. § 290.3. Both the EEOC and NYSDHR are empowered to independently investigate and combat discrimination based on

5

information the agency receives from any source, even where an aggrieved person has not filed a complaint.  "[T]he EEOC's role in combating . . . . discrimination is not dependent on the filing of a charge; the agency may receive information concerning alleged violations  . . . . 'from any source,' and it has independent authority to investigate age discrimination." *Gilmer*, 500 U.S. at 28.  The Division is empowered not only "[t]o receive, investigate and pass upon complaints alleging [discrimination]" but also "[u]pon its own motion, to test and investigate and to make, sign and file complaints alleging violations of this article and to initiate investigations . . . ." N.Y. Exec. L. §§ 295.6(a),(b).

Congress intended a joint federal and state enforcement scheme for Title VII.  NYSDHR and EEOC share jurisdiction over employment discrimination claims.  *See, e.g.*, 42 U.S.C. § 2000e-8(b).  In furtherance of the goal of joint enforcement, the EEOC has, for decades, entered into numerous Worksharing Agreements with state and local fair employment practices agencies, including NYSDHR.  Pursuant to this Worksharing Agreement, the NYSDHR is authorized to act as the EEOC's agent.  NYSDHR can receive and investigate claims that raise violations of federal anti-discrimination statutes.  If NYSDHR receives a complaint that raises discrimination claims under federal law, the complaint is "dual-filed," and assigned both a federal and state charge number.  Annually, the Division receives and investigates more than 4,000 complaints that are dual-filed with the EEOC.  Pursuant to the Worksharing Agreement, the EEOC compensates the Division for each dual-filed complaint that the Division resolves. (Sobkowski Decl. ¶¶12-15)

Just as the EEOC is "master of its own case", *Waffle House*, 534 U.S. at 291, NYSDHR exercises complete control over the complaints pending before it, even those filed by individuals. All complaints filed with NYSDHR are filed in the name of NYSDHR (i.e. "State Division of

Human Rights on the complaint of [complainant]").  Once a complaint is filed in the NYSDHR's

name, a complainant cannot file his or her complaint in court without seeking a dismissal for

administrative convenience or annulment of election of remedies from NYSDHR. N.Y. Exec. L.

§ 297.9.  "The case in support of the complaint shall be presented by one of the attorneys or

agents of [NYSDHR], and, at the option of the complainants, by his or her attorney."  N.Y. Exec.

L. § 297(4)(a).  A complainant who desires that her case be presented solely by her attorney

needs "the consent of the Division." *Id*.

The Massachusetts Supreme Judicial Court found that *Waffle House* applied to a state

civil rights agency's administrative enforcement powers,  powers that are nearly identical to

those of the NYSDHR. *Joule, Inc. v. Simmons*, 459 Mass. 88, 944 N.E.2d 143 (Mass. 2011). In

*Joule*, a former employee filed a complaint with the Massachusetts Commission Against

Discrimination (MCAD) alleging discrimination in employment based on pregnancy and familial

status.  The employer filed a motion to compel arbitration and MCAD intervened.  Relying on

*Waffle House,* the court stated, "[e]ven where there is a clear and unmistakable provision in an

employment agreement requiring arbitration of discrimination claims ... it would not affect the

MCAD's authority ... [to proceed] with its investigation and resolution of [the complainant's]

discrimination complaint—including, if evidence warrants, granting relief specific to [the

complainant]." *Id.* at 95. [1]

The Court noted that where an individual files a complaint, MCAD "proceeds in its own

name" and while it may "recover damages for the individual victim of unlawful discrimination,

[1] The court found employee was not prevented from assisting the MCAD with its investigation or testifying in the hearing before the MCAD but the employee could not intervene as a party in the proceeding because it would "contravene the requirement of the arbitration provision that she resolve her own disputes with [her employer] through arbitration." .. *Id*. at 151  MCAD regulations permit a complainant to request to intervene.  "804 CMR 1.20(4).  Unlike MCAD, NYSHDR only proceeds on its own complaint.  (See, Sobkowski Dec ¶ -).

... the primary purpose of an administrative proceeding before the MCAD is to vindicate the
public's interest in reducing discrimination in the workplace by deterring, and punishing,
instances of discrimination by employers against employees." *Id*. at 93 (internal citations
omitted).

New York's highest court carried forward the *Waffle House* principle that a government
agency may pursue claims related to individual injuries even if the persons aggrieved by the
alleged illegal conduct were obligated to by contract to arbitral resolutions of their claims. *See
People of the State of New York v. Coventry First, LLC*, 13 N.Y.3d 108, 915 N.E.2d 616 (2009).
In *Coventry First*, the New York Attorney General charged investors that bought life insurance
policies from policy holders with fraudulent and anti-competitive practices.  The Defendants
asserted "that the claims for relief specific to particular policy sellers . . . are subject to
arbitration under the sellers' contracts with Coventry First." *Id*. at 113.

The New York Court of Appeals held that an arbitration agreement between defendants
and their alleged victims does not bar the Attorney General from pursuing victim-specific
judicial relief in an enforcement action.   "Like the EEOC," the *Coventry First* court continued,
"the Attorney General should not be limited, in his duty to protect the public interest, by an
arbitration agreement he did not join.  Such an arrangement between private parties cannot alter
the Attorney General's statutory role or the remedies he is empowered to seek."  *Id*. at 114.
The Court reasoned:

> *Waffle House* stands for two broad propositions . . . The first is that
> pro-arbitration policy goals do not require a government agency to
> give up its statutory enforcement authority in favor of arbitration if
> it has not consented to do so, because those goals do not "require
> parties to arbitrate when they have not agreed to do so." The second
> is that the government agency may seek relief specific to a victim

> who agreed to arbitrate claims, because, as here, that relief is best
> understood as part of the vindication of a public interest.

*Id*. at 113-114.

Relying on *Coventry First* and *Joule*, the Iowa Supreme Court held that an arbitration agreement between a complainant at the Iowa Civil Rights Commission (ICRC) and her employer did not prevent the agency from adjudicating her claims of employment discrimination.  "Because the ICRC was not  a party to the agreement and its interest is not derivative of the employee's , we find that the agreement does not limit its ability to bring claims against the employer.  Iowa law authorizing ICRC enforcement is thus not preempted by the [Federal Arbitration Act]," the court held.  *Rent-A-Center, Inc. v. Iowa Civil Rights Com'n*, 843 N.W.2d 727 (2014).

The Iowa Supreme Court held state agencies retain their independent enforcement authority, even when the proceeding was initiated by a complaint from an individual who had agreed to arbitrate the dispute.  Referring to *Coventry First*, the Iowa Court noted that in New York, the attorney general's authority to protect the public interest was held to be comparable to that of the EEOC in *Waffle House* and held that he could seek injunctive and victim-specific relief against Coventry First.  *Id*. at 740.

Like the Division of Human Rights, the Iowa Civil Rights Commission has broad power to investigate discrimination complaints and to hold hearings with respect to charges of discrimination.  *Id*. at 731.

> The ICRC is entrusted by the legislature with interpreting,
> administering, and enforcing the Iowa Civil Rights Act, which was
> designed " 'to eliminate unfair and discriminatory practices in
> public accommodations (and) employment.'"  . . . .The Act is
> intended to "correct a broad pattern of behavior rather than merely

affording a procedure to settle a specific dispute."

*Id*. at 730 (internal citations omitted).

Twice, New York Courts have applied *Waffle House* and *Coventry First* in denying an employer's petition to compel a NYSDHR complainant to arbitrate their discrimination claim pursuant to an agreement the complainant had executed upon starting his job and to stay the Division from processing his complaint.  In *Ladenburg Thalmann & Co. v. Matty*, 36 Misc. 3d 1243(A), 960 N.Y.S.2d 50 (Sup. Ct. New York Co. 2012), the New York Supreme Court referred to the Court's observations in *Waffle House*:

> the EEOC was statutorily authorized to bring enforcement actions on its own behalf, even if the employee had declined to pursue his or her claim. The Court also rejected the employer's claim that the FAA barred the EEOC from pursuing a claim against it as the EEOC was not a party to the employment contract at issue, nor did it agree to arbitrate the claim.

The New York Supreme Court also cited *Coventry First* noting the Attorney General of the State of New York may not be compelled to arbitrate claims brought by him or her on behalf of persons who had signed agreements containing mandatory arbitration clauses.

In *Matty*, the court noted that in *Gilmer v Interstate,* the United States Supreme Court found "an individual [discrimination] claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action."  *Gilmer v Interstate*, 500 U.S. 20 (1991); *see also E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.,* 273 F Supp 3d 260 (E.D.N.Y.2003) (E.E.O.C. cannot be compelled to arbitrate discrimination complaint against employer even though employee could be compelled to do so pursuant to arbitration clause in employment contract).

With respect to the circumstances before it, the Supreme Court, New York County

10

concluded:

> absent any dispute that the SDHR, like the EEOC and the Attorney
> General, has the authority to investigate and prosecute
> discrimination complaints on its own behalf in order to vindicate the
> public interest by eliminating discrimination in employment
> (Executive Law §§ 290, 295), and as the SDHR was not a party to
> the employment agreement between petitioner and Matty, petitioner
> has failed to establish that the arbitration clause at issue precludes
> Matty or the SDHR from pursuing Matty's complaint.

*Id.  See also Perfect Building Maintenance v. Ai Ho and New York State Division of Human Rights*, Index No. 100253/2014 (Supreme Court, New York County 2014) (relying on *Waffle House* and *Coventry First*, the Court held "the Division of Human Rights has an independent right to investigate the employment discrimination case).

None of the cases cited by Petitioner to support its claim of "arbitrability" of NYSHRL claims involve an NYSHRL claim filed with NYSDHR.  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 117 (2d Cir. 2010); *Marciano v DCH Auto Grp*, 14 F. Supp. 3d 322 (S.D.N.Y. 2014); *Ciago v. Ameriquest Mortg. Co*., 295 F. Supp. 2d 324, 334 (S.D.N.Y. 2003); *Wenchun Zheng v Gen. Electric Co.,* No. 115 CV 1232 TJM CFH, 2016 WL 11605144 (N.D.N.Y. Aug. 5, 2016)  In each of those cases, plaintiffs elected to bring their state Human Rights Law claims directly to federal court.  The NYSHRL has an election of remedies provision that permits an aggrieved person to file in court or with the NYSDHR.  N.Y. Exec. L. § 297.9.  At issue in this case is whether those complaints filed with NYSDHR pursuant to N.Y. Exec. L. § 297.1 may proceed where the employee and employer have entered into an agreement to arbitrate discrimination claims.

## II.     THE NYSHRL EMPOWERS NYSDHR TO PROSECUTE AND ADJUDICATE COMPLAINTS THAT HAVE BEEN ISSUED A PROBABLE CAUSE DETERMINATION

Charter takes the position the terms of its agreement "permits [Derfert] to file and pursue claims before federal, state, or local administrative agencies, it explicitly provides that "if [Respondent] choose[s] to pursue the [administrative] claim, any proceeding on the merits or for damages will be subject to arbitration."  (Pet.'s MOL, p.4, Schwallie Decl., Ex. 6).

Charter argues that the United States Supreme Court holding in *Preston v. Ferrer*, 552 U.S. 346 (2008) distinguishes the instant case from *Waffle House*. However, unlike the present case, *Preston* did not involve a pending enforcement action by a state agency.  Furthermore, it is immaterial that EEOC is empowered by statute to prosecute complaints in federal district court whereas NYSDHR is empowered by statute to prosecute claims in an administrative forum.

In *Preston*, a television personality brought suit in State court against an entertainment industry attorney.  They were parties to a contract that included an arbitration provision requiring arbitration of any dispute concerning, among others, the contract's terms, breach, or validity. The attorney had sought arbitration of the dispute in question, but the client brought suit in state court to enjoin arbitration, arguing that under the California Talent Agencies Act (TAA), the California Labor Commissioner had exclusive original jurisdiction over the matter. *Id*. at 350.

Charter writes that "[l]ike the Commissioner in *Preston*, the Division would be an adjudicator of Respondent's claim, as is evidenced by the fact that the . . . [Division] scheduled a public hearing on the merits before an administrative law judge who would decide the case, where . . . [Derfert] can represent herself or prosecute her case with counsel." Pet.'s MOL, p.9.

NYSDHR is not claiming it has exclusive jurisdiction over NYSHRL claims as a reason Derfert should not be enjoined.  The NYSHRL has an election of remedies provision that permits

12

an aggrieved person to file in court or with the NYSDHR.  N.Y. Exec. L. § 297.9.  The

distinction is that once an aggrieved person files a complaint with NYSDHR, rather than in

court, it is NYSDHR that proceeds on the complaint.

In contrast to *Preston*, NYSDHR is not merely an alternative forum.  The decision in

*Preston* carves an out exception for a public agency pursuing an enforcement action its own

name. *Id.* at 359, n.7. ("Enforcement of the parties' arbitration agreement in this case does not

displace any independent authority the Labor Commissioner may have to investigate and rectify

violations of the TAA.")  *Id.*at n. 7.

Like the EEOC in *Waffle House,* NYSDHR is a public agency acting in its prosecutorial

capacity to bring an enforcement action against Charter, independent of Derfert's own claims, in

order to protect the public interest under the New York State Human Rights Law.

NYSDHR exercises control over all complaints filed with NYSDHR.  Complaints are

filed in the name of the Division (i.e. NYSDHR Case No. 10195081, *New York State Division of

Human Rights on the Complaint of Lynda M. Derfert v. Charter Communications, Inc*).

(Sobkowski Decl. ¶29).  By statute, an attorney from NYSDHR's Prosecution Unit is assigned to

present each case on behalf of NYSDHR, and only with the consent of NYSDHR may any

complainant's attorney solely present a case (Sobkowski Decl. ¶35). There is no procedural

mechanism for Derfert to join the hearing as an intervenor.  The complaint remains in the name

of NYSDHR, even if the complaint itself is based on Derfert's allegations of discrimination and

if NYSDHR seeks compensatory and other relief on behalf of Derfert. (Sobkowski Decl. ¶36

While any aggrieved party can seek judicial review of a final order, only NYSDHR can obtain

court enforcement of a final order awarding relief to an aggrieved party, civil fines and penalties

or other relief awarded in the public interest.  N.Y. Exec. L. § 298. (Sobkowski Decl. ¶ 25).

In *Rent-A-Center, Inc. v. Iowa Civil Rights Com'n*, *supra*, the Iowa Supreme Court addressed a similar assertion that *Preston* requires that  "FAA preempts state law granting administrative jurisdiction to the [Iowa Civil Rights Commission] over matters related to Henry's employment. . . . We do not share this view."  The Court explained,

> In *Preston*, a private individual sought to rely on state law to avoid having to arbitrate a specific issue he had agreed to arbitrate. (Preston, at 353-54) The California Labor Commissioner would have determined only whether the parties' contract was valid—a question committed to the arbitrator by the contract itself. (Preston at 352) By contrast, here, the ICRC is not only a forum. Rather, like the EEOC in *Waffle House,* it is a public agency acting in its prosecutorial capacity to bring an enforcement action against RAC, independent of Henry's own claims, in order to protect the public interest under the Iowa Civil Rights Act. *Preston* carves out this specific situation and makes clear it is not covered by the Court's holding. (*Preston* at 359, n.7).

*Id*. at 737.

In *Joule, Inc. v. Simmons*, *supra*, the Massachusetts Supreme Judicial Court addressed the same argument about the holding in *Preston* and, like the Iowa Supreme Court, rejected it.

> An argument has been advanced, and addressed by the parties and amici, that pursuant to [Massachusetts Law Against Discrimination] the MCAD "adjudicates" complaints of discrimination brought by private complainants and, therefore, that the decision of the United States Supreme Court in *Preston v. Ferrer*, 552, U.S. 346 (2008) controls the outcome here. We disagree.

*Id*. at 88.

Noting the case in *Preston* involved a dispute over the validity and enforceability of the arbitration agreement itself based on the unlicensed status of the attorney Preston as a "talent agent" under the California Labor Code and where the Labor Commissioner was vested with the authority to determine disputes under the relevant code, the Massachusetts Court explained,

14

> [I]n Preston the Court was considering who was to adjudicate the
> private parties' dispute in the first instance, the arbitrator or the
> administrative agency. See id at 358-359 The Court distinguished
> *Waffle House,* emphasizing that in that case, "the Court addressed
> the role of an agency, not as adjudicator but as prosecutor, pursuing
> an enforcement action in its own name." *Id.* at 359. Indeed, the Court
> noted, "[e]nforcement of the parties' arbitration agreement in this
> case does not displace any independent authority the Labor
> Commissioner may have to investigate and rectify violations of the
> TAA." *Id.* at 359, n. 7. Similarly, as we have discussed in the text,
> the MCAD, proceeding under G.L. c. 151B, § 5, is prosecuting a
> claim in its own name and rectifying violations of G.L. c. 151B in
> the public interest. . . . It is beside the point that the prosecution takes
> place not before a judge in a court but in the administrative forum in
> the first instance.

*Id.* at 96, fn 10.

The decision in *Sec. LLC v Prowse*, No. 20 CV 217 JGK, 2020 WL 433859 (S.D.N.Y. 2020) is also inapposite. Holding that a "Section 120" Workers Compensation claim alleging retaliation by an employer was arbitrable and could not be heard by the Board, the Court explained that *Waffle House* is not applicable to the facts of this case because the Board does not act as a prosecutor when an employee brings a Section 120 claim, but instead acts as an impartial arbiter." *Prowse,* 2020 WL 433859 at *7.

## III.   CHARTER DOES NOT SATISFY THE REQUIREMENTS FOR GRANTING A PERMANENT INJUNCTION

The standards for a preliminary injunction and a permanent injunction are "essentially the same," except that a permanent injunction requires actual, instead of the likelihood of, success on the merits. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). Where an injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 192 (2d Cir. 2014) (quoting *Red Earth LLC v. United States*, 657 F.3d

15

128, 143 (2d Cir. 2011)), "[a] plaintiff seeking a [permanent] injunction must establish . . .

succe[ss] on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public

interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Salinger v.

Colting*, 607 F.3d 68, 77–80 (2d Cir. 2010). "An injunction is a matter of equitable discretion; it

does not follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32

(citation omitted).

NYSDHR does not take a position whether Charter will succeed on the merits of their

petition to compel arbitration. However, by seeking to enjoin Derfert and require her to

withdraw the NYSDHR complaint, Charter requests relief it is not entitled to. Enjoining Derfert

has the effect of interfering with NYSDHR's independent authority to enforce the NYSHRL.

Further, Charter has not established irreparable harm. If Charter establishes they have an

enforceable agreement, Derfert may well be compelled to arbitrate her claims. *See Gilmer v

Interstate/Johnson Lane Corp*., 500 US 20, 28 (1991). This cannot be considered a form of

irreparable harm that gives rise to an injunction.

Finally, the balance of equities and the public interest tip strongly in favor of the

NYSDHR. *See Winter*, 555 U.S. at 23-24 (overturning the court below noting that the public

interest alone required denial of the injunctive relief). "[T]he balance of equities and

consideration of the public interest . . . are pertinent in assessing the propriety of any injunctive

relief, preliminary or permanent." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32

(2008); *see also Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010) (finding no reason to

ignore the balance of equities when injunction sought "in *any* type of case").

If a permanent injunction is granted against Derfert, NYSDHR will be impaired in its

ability to make a final determination under New York State law as to whether Charter engaged in lawful discriminatory conduct.  Such an order would undermine the public's confidence in the State's anti-discrimination agency, and call into question NYSDHR's ability to fully utilize the NYSHRL law to police discriminatory conduct. In this instance, NYSDHR would be prohibited from interviewing Derfert or calling her as a witness to the alleged discriminatory conduct. Without the alleged victim of the discrimination able to testify, NYSDHR may not be able to make a complete record on this matter.  This harm weighs against granting an injunction.

In *Waffle House*, the Supreme Court held "whenever the EEOC chooses . . . to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief. To hold otherwise would undermine the detailed enforcement scheme created  by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function." *Id*. at 295-296.  Like the EEOC, the Division was created to vindicate the public interest by eliminating and preventing unlawful discrimination in employment, N.Y. Exec. L. § 290.3, and no agreement between private parties can deprive NYSDHR of its independent statutory authority to investigate and act upon any complaints of discrimination.

Here, Charter has relied on prior arrest that was resolved in Derfert's favor to refuse to employ her.  In addition, Derfert alleged she attempted to apply for employment with Charter on numerous occasions.  Charter acknowledged was disqualified for the subsequent positions applied for due to recently failing the background check. (Sobkowski Dec., Ex. 1).  Charter has not suggested that these subsequent attempts to apply were also subject to an agreement to arbitrate.

17

An anti-discrimination agency's "client is the public interest." *Matter of Hurwitz v. New York City Commission on Human Rights*, 142 Misc.2d 214, 217, 535 N.Y.S.2d 1007 (Sup. Ct. New York Co. 1988) affd. 159 A.D.2d 417 (1st Dep't 1990), lv. to app. den.  76 N.Y.2d 702 (1990).  "The public interest in redressing acts of discrimination is one of great significance." *Matter of Louis Harris & Associates v. DeLeon*, 854. N.Y.2d 698, 704, 646 N.E.2d 438,  (N.Y. Ct. of App. 1994).  When the Commissioner of the Division of Human Rights orders relief after a hearing to a victim of discrimination, she does so with the authority "to effectuate the purpose of Human Rights Law (see, N.Y. Exec. L. art. 15, § 297(4)(c).)"  *Matter of Club Swamp Annex. v. White,* 167 A.D.2d 400, 402, 561 N.Y.S. 2d 609 (2nd Dept 1990), lv. to app. den. 77 N.Y.2d 809 (1991).

This Court may also consider that a weighing of interests is not appropriate in this case. In *Waffle House*,  the Supreme Court held that Title VII directs the EEOC to exercise enforcement powers, remedies and procedures, including bringing an enforcement suit in federal district court. 534. U.S. at 291.  The Court also noted that nothing in the FAA mentions enforcement by public agencies and ensures only private parties' agreement to arbitrate. *Id*. at 289.  The Court concluded the text of Title VII does "not authorize the courts to balance the competing policies of [Title VII] and the FAA or to second-guess the agency's judgment concerning which if the remedies authorized by law that it shall seek in any given case."  *Id*. at 297.

**CONCLUSION**

For the foregoing reasons NYSDHR's Motion to Dismiss should be granted and the

Petitioner's request for an injunction should be denied.


Dated: August 19, 2020
Buffalo, New York

_____
Erin Sobkowski