1                    UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF NEW YORK

3

4     - - - - - - - - - - - - - -X
      CHARTER COMMUNICATIONS, INC.,            20-CV-915(GWC)
5                    Plaintiff

6     vs.
                                               Rochester, New York
7     LYNDA M. DERFERT,                        July 29, 2020
                     Defendant.                11:11 a.m.
8     - - - - - - - - - - - - - -X

9

10                  TRANSCRIPT OF VIDEO PROCEEDINGS
            BEFORE THE HONORABLE GEOFFREY W. CRAWFORD
11            UNITED STATES CHIEF DISTRICT JUDGE (VT)

11

12                        MORGAN LEWIS & BOCKIUS, LLP
13                        BY: KIMBERLEY E. LUNETTA, ESQ.
                          101 Park Avenue
14                        37th Floor
                          New York, New York 10178-0060
15                        Appearing on behalf of the Plaintiff

16

17                        LYNDA M. DERFERT, PRO SE
                          212 Como Park Boulevard
                          Cheektowaga, New York 14227
18

      ALSO PRESENT:       Erin Sobkowski, NYS Division of Human
19                        Rights

20    AUDIO RECORDER:     Lisa Duque

21

      TRANSCRIBER:        Christi A. Macri, FAPR-CRR-RMR-CSR(CA/NY)
22                        (585) 613-4310
                          Kenneth B. Keating Federal Building
23                        100 State Street, Room 2120
                          Rochester, New York 14614

24

25    (Proceedings recorded by electronic sound recording,
      transcript produced by computer).

<u>**P R O C E E D I N G S**</u>

\*   \*   \*

**THE CLERK:** This is the case of

Charter Communications vs. Lynda M. Derfert, 20-CV-915.

And the appearances are Lynda Derfert, Kimberly

Lunetta, Erin Sobkowski, and the others are just listening.

**THE COURT:** All right.

**THE CLERK:** All right.

**THE COURT:** Thank you.  We'll get right to it.  Who

is appearing for Charter Communications?

**MS. LUNETTA:** I am, Your Honor, Kimberly Lunetta

from Morgan Lewis.

**THE COURT:** Kimberly, I'm sorry, your last name?

**MS. LUNETTA:** Lunetta, L-U-N-E-T-T-A.

**THE COURT:** In place for Mr. Shaulson?

**MS. LUNETTA:** Well, yes, in place of Mr. Shaulson.

**THE COURT:** Well, I mean only because he signed

the --

**MS. LUNETTA:** Yeah, yes, he will not be appearing.

**THE COURT:** All right. And who do I have for Lynda

Derfert?  Anybody for the respondent?

**MS. LUNETTA:** She is pro se, Your Honor.

**THE CLERK:**  Lynda Derfert is here.

**THE COURT:** Sorry?

**MS. LUNETTA:** She's pro se, Your Honor.

 1          **THE COURT:** She's pro se.  And do I see her there?
 2  No.
 3          **MS. DERFERT:** Yes, Lynda Derfert is here.
 4          **THE COURT:** I can't see your face.  Do you want to
 5  raise your hand?
 6          **MS. LUNETTA:** You might have to click your arrow to
 7  see more people.
 8          **THE COURT:** Let's see, what have I done now?
 9          **MS. SOBKOWSKI:**  There's an option for gallery view.
10          **MS. DERFERT:** Four people, now I see three.
11          **MS. LUNETTA:** Now we see you.
12          **THE COURT:** Oh, I've got one, two, three, four,
13  five -- all right, well, I'm sure you're there, Ms. Derfert, I
14  just can't open this up to -- oh, here, look at that.  I'll be
15  able to hear you in any event.
16          **MS. DERFERT:** I am here.
17          **THE COURT:** And, Ms. Sobkowski, who are you in for?
18          **MS. SOBKOWSKI:** The New York State Division of Human
19  Rights.
20          **THE COURT:** Excellent.  Are you on staff with them
21  or through the A.G.'s Office?
22          **MS. SOBKOWSKI:** On staff.
23          **THE COURT:** Yeah, great.  Are those the three
24  parties then?
25          **MS. LUNETTA:** Your Honor, the Division is not a

1  party.

2  **THE COURT:** Right, right, but we'll allow you to

3  participate, but those are the three entities.  Anybody else

4  planning to take part today?

5  **MS. LUNETTA:** No.

6  **THE COURT:** No? Good.  My only goal today was to --

7  was two things.  One to sort of arrange for briefing so that

8  we can decide this together in a sensible way hearing from

9  everybody, and also to make sure that we had enough time so

10 that the human rights proceeding wouldn't kind of just begin

11 and the Court and the Division be sort of at odds with each

12 other.

13 Ms. Sobkowski, do we have enough time to kind of

14 get this done in a sensible way, or are you about to have a

15 hearing?  I couldn't quite tell.

16 **MS. SOBKOWSKI:** No.  The only thing that's been

17 scheduled is a preliminary conference and that's on for

18 August 4th.  There's been no public hearing scheduled.

19 **THE COURT:** Oh, okay.  So from the Agency's

20 perspective, you'd be glad to wait -- I don't mean years, but

21 wait a couple of weeks so that we can brief this and decide it

22 and get it figured out before you reach the merits?

23 **MS. SOBKOWSKI:** Yes.

24 **THE COURT:** Yeah.  And --

25 **THE CLERK:** Judge, we lost Ms. Derfert.

1          **THE COURT:** Oh, no.

2          **THE CLERK:**  She fell off the screen.  So she's

3  gonna have to reconnect.

4          **THE COURT:** All right, I'm glad to wait.

5          **THE CLERK:**  So sorry.

6          **THE COURT:** It happens.  Can you send her a text or

7  something?  Does she know that she's MIA?

8          **THE CLERK:** I assume she knows she's MIA.  Let me

9  give her a call.

10          **THE COURT:** It's fun seeing everybody's home.  It's

11  my favorite thing about Zoom.  I haven't --

12          **MS. LUNETTA:** Are you in the office?

13          **THE COURT:** Yeah, a little boring.  But usually I

14  get to see people's houses like yours and -- I haven't seen

15  like anyone's cat or child walk by, but --

16          **MS. LUNETTA:** I have a dog.

17          **THE COURT:**  There you go....oh, look, right there

18  with you, yeah.

19          **MS. LUNETTA:**  She's my paralegal.

20          **MS. SOBKOWSKI:** I sent my children away for the

21  morning so...

22          **MS. LUNETTA:** Good call, Erin.

23          **MS. SOBKOWSKI:** Yeah, they're off with their aunt.

24          **MS. LUNETTA:**  Your Honor, I'm happy to repeat this

25  when Ms. Derfert gets back on, but would you mind just hearing

1   me on the issue of the Division's involvement before we hang

2   up?

3               **THE COURT:** Sure.

4               **MS. LUNETTA:** Thank you.

5               **THE CLERK:** Judge, I just wanted to give you an

6   update.  Ms. Derfert is gonna call in because she's having

7   connection problems.

8               **THE COURT:** Okay, she's gonna call in on the phone?

9               **THE CLERK:** Yeah, so she's gonna call in on the

10  conference instead of go by video.

11              **THE COURT:** All right. Ms. Sobkowski, why don't you

12  give her a minute, she'll call in in a second.

13              **THE CLERK:** Yeah, she'll call in.

14              **THE COURT:** Yeah, Ms. Sobkowski, we've all been

15  coming in for a while because it just is too hard to manage

16  the criminal side of the docket from your living room.  You

17  know, it's just -- because most people have to be seen one way

18  or the other and some appear by video, but some don't and --

19  the civil cases, I don't think I've seen a civil lawyer in

20  court since March; they're all working from home.

21              **MS. LUNETTA:** I've rarely left my house.

22              **THE COURT:** Yeah, yeah, there's just really no need

23  for it.

24              **MS. LUNETTA:** All the downstate courts are still

25  mostly remote, except for criminal.

1          **THE COURT:** Right.  Yeah, that's kind of what brings

2   us in.

3          **MS. DERFERT:** Hello?  Hello?

4          **THE CLERK:** Hello, this is Ms. Derfert on the line.

5          **THE COURT:** Oh, good, Ms. Derfert, welcome back.

6          **MS. DERFERT:** Hi.

7          **THE COURT:** We've just been chitchatting about dogs

8   and coming into the office.

9          **MS. DERFERT:** Oh.

10          **THE COURT:** Nothing to do with the case. Glad to

11  have you back.

12          **MS. DERFERT:** Talking about dogs and I'm having

13  trouble getting connected with you.

14          **THE COURT:** Yeah.  So here you are.

15          **MS. DERFERT:** I apologize, I apologize.  I've never

16  used a computer or video thing ever in my life, so I do

17  apologize.  I'm sorry.  I never use a computer so...

18          **THE COURT:** It's totally fine.

19          **MS. DERFERT:** Thank you.

20          **THE COURT:** All right. What we thought we'd start

21  with is Attorney Sobkowski from the New York City Division of

22  Human Rights wants to explain her agency's role in the case.

23  Glad to hear from you.

24          **MS. DERFERT:** Okay.

25          **MS. SOBKOWSKI:** Okay, do you want me to proceed?  I

1   know --

2           **THE COURT:** Please.

3           **MS. SOBKOWSKI:** Okay.  So the Division is not a

4   party to this matter.  We intend on filing a motion to

5   intervene in this.  Ms. Derfert has apprised us of this

6   litigation.  We don't really take a position as to the

7   parties' motion to compel arbitration, but we do have concerns

8   about the position that Charter Communication is taking with

9   regard to requesting that this Court order Ms. Derfert to

10   withdraw her complaint and to be enjoined from further

11   proceeding in the Division's proceedings.

12           **THE COURT:** All right. So could I look to you for

13   briefing and -- and a position contrary to Charter's on the

14   question of arbitrability?  You'll take the -- you'll defend

15   the position that Ms. Derfert is permitted by law to go

16   forward before your -- before the Human Rights Division?

17           **MS. SOBKOWSKI:** That's correct.  We don't take a

18   position as to arbitrability of the matter.  You know, that --

19   it's just -- we're not a party to the arbitration.

20           **THE COURT:** Yeah.

21           **MS. SOBKOWSKI:** So I don't really have any, you

22   know, specific -- we don't really have any specific position

23   on that.  It's not our area of expertise.

24         But we do argue that there's Supreme Court

25   precedent that an individual, regardless of an arbitration

1    agreement in place between her and her employer or here in

2    this case potential employer, is still free to pursue their

3    complaints, their discrimination complaints in an

4    administrative agency.

5            **THE COURT:** Okay.  Kind of like somebody pursuing a

6    claim for Worker's Compensation benefits?

7            **MS. SOBKOWSKI:** Yes.  Although, you know, in this

8    case -- right, you know, we consider these separate, but

9    parallel tracks.

10           **THE COURT:** Yeah, okay.

11           **MS. LUNETTA:** Your Honor, may I respond?

12           **THE COURT:** Yeah, but let me just set up kind of a

13   plan.  What would be a reasonable deadline, Ms. Sobkowski, for

14   you to file a motion to intervene and, more importantly, get

15   your briefing in on that issue?

16           **MS. SOBKOWSKI:** Two weeks.

17           **THE COURT:** Yeah, all right. And from Charter we

18   have Ms. Lunetta.  How do you see it?

19           **MS. LUNETTA:** Well, as far as briefing goes, if I

20   could have two weeks to respond, that would be great.

21           But before I argue something that I'm already

22   winning, are you -- is Your Honor inclined to grant the TRO at

23   this point while we brief?

24           **THE COURT:** Yeah, I think that's fair.  Do you --

25   what they're asking for, Ms. Derfert, is that we hold

1    everything still.  I don't know that we really need to go so

2    far as a TRO.

3              Can we just reach an agreement that there will be

4    no further proceedings in the -- in front of the Human Rights

5    Division until the Court issues a ruling on the petition to

6    compel arbitration?

7              **MS. LUNETTA:** Well, Your Honor, I would prefer that

8    you hear me on the TRO because I think there's -- we meet all

9    of the requirements easily for a TRO here, and the point that

10   I'll make in a moment when you allow me is that this issue is

11   really between Ms. Derfert and Charter and it has nothing to

12   do with the Division.

13             So if -- if -- if the Court is going to order

14   briefing from the Division, that's of course fine obviously,

15   but if you -- I would still ask for a TRO enjoining

16   Ms. Derfert from proceeding in the Division in the meantime.

17             **THE COURT:** Ms. Derfert, any objection to that?  You

18   probably don't know what we're talking about.

19             **MS. DERFERT:** Not really.  I mean, I'm hearing drop

20   proceedings or not and I -- I don't really understand because

21   that's why I'm on this call, I think.  I don't want to -- I

22   don't think I was wrong, so that's all I know.  So I don't

23   know what -- I know -- if you want to hold this, what we're

24   doing right now off for a period of time?

25             **THE COURT:** That's correct.  What you're doing

1 before the Human Rights Division, Charter is asking that you

2 hold -- that the Court order that you wait to go forward in

3 that hearing --

4           **MS. DERFERT:** -- until we go further with this one?

5           **THE COURT:** Exactly.

6           **MS. DERFERT:** Okay, okay.  As long as nothing is

7 said and done in this conversation then I, you know, will work

8 and wait.  I mean, I -- because our next thing I think is

9 August 4th.  So we're just -- what you're asking is just to

10 hold off August 4th until we get done with this?  We complete

11 this --

12           **THE COURT:** Yeah.

13           **MS. DERFERT:** -- solution?

14           **THE COURT:** Exactly.

15           **MS. DERFERT:** Correct?

16           **THE COURT:** Yes.

17           **MS. DERFERT:** Yes, I agree with that.

18           **THE COURT:** Okay.  I think that's fair as well.  You

19 know, it's sort of a tricky issue.  I don't want to get it

20 wrong.  It's going to take some time to figure it out.

21           I'll issue the TRO with the agreement of the

22 parties.  It means nothing more than that we'll take some time

23 and wait to hear from the Human Rights Division attorney and

24 from the Charter attorney over the course of the next month

25 before the human rights case moves forward.

1                 Ms. Sobkowski --

2           **MS. SOBKOWSKI:** Your Honor --

3           **THE COURT:** Yes.

4           **MS. SOBKOWSKI:** -- sure, I just wanted to interject

5  that the thing that's scheduled for August 4th is just a

6  preliminary conference.  So, you know, not unlike what we're

7  doing today.

8           **MS. DERFERT:** Okay.

9           **MS. SOBKOWSKI:** And there has been no hearing

10 scheduled and so, you know, the Division has an interest I

11 think in getting all the information on the table just as you

12 do here today and having the parties come and get on that

13 telephone conference with the ALJ who has been assigned to the

14 preliminary conference.

15                 So, you know, in that respect we do request that

16 that meeting be allowed to proceed.

17          **MS. DERFERT:** Oh, okay.

18          **MS. LUNETTA:** Your Honor, Charter objects to that.

19          **MS. DERFERT:** Oh.

20          **THE COURT:** Well, here's the problem, Ms. Sobkowski.

21 These things sort of take on a life of their own and I don't

22 know if that ALJ will be as reasonable as you -- I'm sure he

23 or she will be, but if somebody gets their back up and insists

24 on their right to hold an administrative hearing pronto, then

25 we're all kind of in a yank and I don't think we've really

1  accomplished very much when Ms. Derfert and Charter agree that

2  postponing things for a month so that the Court can hear from

3  everybody is sensible.

4          I'm just always a little nervous about having two

5  tribunals hearing the same case at the same time because I've

6  never seen it work well.

7          **MS. SOBKOWSKI:** Okay, that's -- I mean, that's fine.

8  Just -- just -- I would just note that, you know, we're not a

9  party here, so obviously the TRO wouldn't be issued on our

10 consent anyway I guess.  So that's fine.

11         **THE COURT:** And you just make a note that the fact

12 that Ms. Derfert doesn't show up on the phone for her

13 August 4th hearing doesn't mean she's abandoning her case.

14         **MS. SOBKOWSKI:** Absolutely.

15         **THE COURT:** It just means she's following the rules

16 here and -- and deferring the administrative proceeding until

17 the Court has a chance to rule.

18         **MS. SOBKOWSKI:** Fair enough.

19         **THE COURT:** So, Ms. Derfert, you don't lose -- they

20 aren't going to think that you're walking away from your

21 administrative hearing.  Ms. Sobkowski will put some kind of

22 entry in the docket saying that you and Charter have agreed to

23 postpone further proceedings in the -- before the

24 administrative body, you know, until -- until I can hear from

25 you both.

1        **MS. DERFERT:** Okay.

2        **THE COURT:** So any objection to the motion to

3   intervene from Charter?

4        **MS. LUNETTA:** Yes, absolutely.  Certainly not if

5   Your Honor wants to hear from the Division, we'll respond.

6        But this has already been decided by the Supreme

7   Court.  I'm sorry, Ms. Sobkowski was referring I'm sure to the

8   Supreme Court case *EEOC vs. Waffle House*.  In that case,

9   though, this is the -- the Supreme Court then distinguished

10  the facts here from that case.  In *Waffle House* the EEOC was

11  bringing a claim against an employer on its own behalf,

12  exercising its enforcement power to bring an action against

13  the company.

14        There, of course, and we don't disagree with this,

15  our arbitration agreement specifically says that she can file

16  a charge, but that any hearing on the merits would have to be

17  arbitrated.

18        And so the Supreme Court actually dealt with this

19  exact issue in *Preston vs. Ferrer*; Justice Ginsberg actually

20  wrote that opinion and the Court cited numerous cases ordering

21  arbitration of claims under laws enforced by the EEOC, and the

22  Court distinguished in that case the fact s we have here where

23  it's an adjudication on the merits; it's not an enforcement

24  action by the Division.

25        We certainly don't dispute -- we hope they don't,

 1   but we certainly don't dispute the Division's right to bring a

 2   claim against an employer for, you know, violating the New

 3   York State Human Rights Law.

 4           Here, though, they're not -- they would not be

 5   acting in their prosecutorial function.  They would be acting

 6   as an adjudicator with the ALJ actually making a decision on

 7   the merits of this claim.  That part Ms. Derfert already

 8   agreed to arbitrate.

 9           And Your Honor, you mentioned Worker's Comp and I

10   believe you specifically said Worker's Comp for benefits, and

11   certainly Worker's Comp Board has exclusive jurisdiction over

12   Worker's Comp benefits.

13           But we recently succeeded in obtaining a permanent

14   injunction against an employee who sought to pursue a Worker's

15   Comp retaliation claim through the Board.  That itself was not

16   in the exclusive jurisdiction of the -- of the Board because

17   it was not for benefits.  And Judge Koeltl in the Southern

18   District of New York granted that permanent injunction in that

19   case.  We cited it in our papers, it's *Prowse vs. UBS*.

20           So as far as from Charter's point of view, the

21   motion to intervene and all of the subsequent briefing is

22   unnecessary and, you know, an unnecessary use of resources

23   when this has already been decided by the Supreme Court.

24           So I would -- I would ask Your Honor to consider

25   taking a different tact, perhaps making them file a motion or

1  a preliminary letter or something that might reduce the costs

2  if -- if we can, maybe a pre-motion conference, because to

3  fully brief this issue that's already been decided by the

4  Supreme Court seems unnecessary.

5        **THE COURT:** But haven't you made a pretty good case

6  that this is a nuanced and complex area of the law that is

7  going to take some time to figure out?  And I strongly suspect

8  that Ms. Derfert, as a pro se individual, is not going to be

9  equipped to -- to brief this.  I haven't met her, but she

10 doesn't use a computer and is, you know, not an attorney.

11       How else am I going to hear both sides of the case?

12       **MS. LUNETTA:** So, Your Honor, the Division doesn't

13 represent Ms. Derfert in this motion to compel.  And I will

14 say just to make clear for Ms. Derfert, we're not asking her

15 to drop her claims and not pursue them.

16       All we're -- all we're asking her to do is -- is

17 dismiss her claim -- or have the Court enjoin her from

18 pursuing this at the Division level and she file the demand

19 for arbitration, which all of the costs except for the filing

20 fee, which as Your Honor knows is, you know, permissible.

21 Other than the filing fee, Charter picks up all of the fees

22 for arbitration.

23       And so all we're asking her to do -- we're ready to

24 litigate it immediately in arbitration.  We're not looking to

25 delay her -- her pursuit of justice on her claims, right?

1        All we want her to do is pursue it in arbitration

2   at triple A and we would help her with that filing process.

3   So we're not asking her to -- to dismiss everything; we're

4   just asking her to pursue it in a different forum in case that

5   wasn't clear to her from our papers, and I understand most of

6   our papers are not, you know, crystal clear to non-lawyers.

7        I don't think that the -- that the issues are at

8   all ambiguous or nuanced.  This is very clear.  It's -- if it

9   were the New York State Division that was pursuing a claim

10  against Charter, I wouldn't be here.  I wouldn't be moving to

11  compel or enjoin the State Division from doing that.

12       Here all we're asking is that Ms. Derfert follow

13  the agreement that she made with Charter and instead of

14  pursuing her claims at the Division, pursue them in an

15  arbitration before a neutral arbitrator.

16       **THE COURT:** All right. Ms. Derfert, I give you a

17  turn.  Anything that you wanted to add on this issue?  And

18  then I'll ask Ms. Sobkowski and then we'll sort of look for a

19  close.

20       **MS. DERFERT:** Okay.  So in other words, you're like

21  looking to take care of this through the arbitration court and

22  not through the Division of Human Rights is what you're

23  asking?

24       **THE COURT:** That's what they're asking, correct.

25       **MS. DERFERT:** Okay.  Well, I got -- just received,

1  like, three reams of paper only like six or seven days ago.

2  So I -- I'm -- if we're -- as long as -- see, I'm not sure.

3  This is just -- I -- too much.  A week ago they said okay,

4  here this is, arbitration, I didn't even know what half of it

5  meant.

6         So I'm trying to sift through some of these papers

7  to even understand, but I do understand what she's saying and

8  at this very moment I -- I don't know because I don't know the

9  two different options, you know.

10         I mean, I'm just looking to settle this thing.

11  It's been a long time, so I don't know what to say at this

12  moment.  I'm very nervous, scared because, like I say, I don't

13  know a bunch of legal stuff and -- I don't know.  I just don't

14  want to feel this -- how many years have been a waste of time

15  to just say a yes or no right now.

16         I don't know what's in my best interest.  I'm

17  confused.  If I could read some of these papers here to see

18  what I signed about the arbitration and that, you know, and

19  then I'll at least know what's going on.

20         It was just too fast.  Everything -- people came

21  two days, three days in a row with papers, papers, papers,

22  papers.  I was like oh, my goodness.

23         **THE COURT:** It's hard.  There's no pressure on you

24  to make a decision on the phone or to do anything today.

25         I have now by video met Ms. Lunetta.  I can tell

1  you that she is a very professional person.  That if you pick

2  up the phone she will treat you with courtesy.  She may not

3  agree with you, but she is going to be super polite and

4  professional --

5          **MS. DERFERT:** Right.

6          **THE COURT:** -- with you if you have questions that

7  she can answer or you want to talk about the case directly

8  with her.

9          Ms. Lunetta, are you guys in contact?  Does she

10  know how to find you?

11          **MS. LUNETTA:** We have not been in contact directly

12  except by letter, but I'm happy to send her -- now that I have

13  her e-mail address, I will send her an e-mail with my cell

14  phone number and all my direct contact information.

15          **THE COURT:** Yeah.

16          **MS. LUNETTA:** I would just like to say so that she

17  has this in her mind, the -- she also has all of the same

18  remedies available.  So the arbitration process doesn't

19  deprive her of any of the remedies that she would have before

20  the Division or in court.

21          So I just want to make that clear to her because,

22  you know, just so she has that to think about before we speak.

23  But I'm happy to speak with her.

24          **THE COURT:** Okay.  And the --

25          **MS. LUNETTA:** -- and, Your Honor, quickly -- quickly

1   on the intervene -- on the intervention issue.

2           **THE COURT:** Hang on.  Let me finish up with

3   Ms. Derfert and then give you a chance.

4           **MS. LUNETTA:** Sure, no problem.

5           **THE COURT:** The other option you always have,

6   Ms. Derfert, is you can always speak to an attorney.  You can

7   probably with some looking around find somebody that

8   specializes in employment law, employment troubles.  You can

9   find somebody that specializes in representing employees and

10  that's -- he or she may be able to answer questions for you.

11  I always urge people to do it.

12          **MS. DERFERT:** Right.

13          **THE COURT:** There are lawyers out there that

14  specialize in work like this and can give you some guidance,

15  maybe represent you, maybe not, but that's an option you

16  should think about.

17          **MS. DERFERT:** It was only two days ago that I knew

18  about today.  So I was, like, I couldn't even -- wouldn't even

19  think to call anybody.  I didn't know who to call.  But, yes,

20  I understand and I would appreciate if I could get her, you

21  know, she could send me the e-mail and stuff so...

22          **THE COURT:** Yeah, so --

23          **MS. LUNETTA:** I'll do it right after this.

24          **THE COURT:** All right.

25          **MS. DERFERT:** Okay.

1          **THE COURT:** Ms. Sobkowski, anything further on the

2    view of intervention?

3          **MS. SOBKOWSKI:** Yes.  The Division, you know, the

4    Division is an enforcement agency and regardless of the pro

5    arbitration goals under the FAA, Ms. Derfert has the right and

6    the Division of Human Rights has the right to proceed with her

7    claim at -- at the -- at an administrative forum.

8          And contrary to Charter's position, the human

9    rights -- the Division of Human Rights sits in a very similar

10   position to the EEOC, and New York courts have held that we

11   are here to vindicate the public interest and that we have

12   been charged with enforcement -- investigation and enforcement

13   of the Human Rights Law.

14         And this is the Division complaint so, you know,

15   Ms. Derfert's -- the allegations in the complaint, the caption

16   here is Lynda Derfert.  The human -- the State Division of

17   Human Rights on the complaint of Lynda Derfert, we are in

18   charge of this complaint, we are enforcing the Human Rights

19   Law and it's our position that under Supreme Court, *EEOC*

20   *vs. Waffle House* and *Gilmer*, that we have the right to proceed

21   here, the right to investigate, the right to enforce this --

22   these allegations of discrimination in New York State.

23         And that Mrs. Derfert can go forward with

24   arbitration and she can go forward with her complaint at the

25   Division of Human Rights.

1        **THE COURT:** I don't really understand how that would

2   work.  Would you -- if she were (talking at the same time) --

3        **MS. SOBKOWSKI:** -- (talking at the same time).

4        **THE COURT:** -- two overlapping awards or what would

5   happen?

6        **MS. SOBKOWSKI:** No.  They can proceed parallel.

7   They're separate and parallel and that, you know, whoever goes

8   first, you know, there may be some collateral estoppel issues,

9   but the Division is free and the -- to vindicate the public

10  interest and to seek individual damages and damages on behalf

11  of New York State to vindicate the public interest.

12       **THE COURT:** All right. Well, sometimes we see

13  ordinary negligence claims proceeding in state and federal

14  court at the same time.  It's not desirable, but it's not

15  prohibited either.

16       So it would be a bit like that from your

17  perspective?

18       **MS. SOBKOWSKI:** Yes.  They can proceed on, you know,

19  separate but parallel tracks.  One doesn't necessarily have to

20  precede the other.

21       **THE COURT:** All right. And likely whichever one got

22  done first would -- would establish *res judicata*?

23       **MS. SOBKOWSKI:** Correct.

24       **THE COURT:** Yeah, all right. Would it be within your

25  bailiwick to speak with Ms. Derfert if she were to call you?

1   I don't know what your responsibilities are.

2           **MS. SOBKOWSKI:** Yes.  In fact, she's been assigned a

3   Division attorney that she's been working with --

4           **THE COURT:** Oh, okay.

5           **MS. SOBKOWSKI:** -- who will be (indiscernible audio)

6   the case.  So she can reach out to Neil Zions.

7           **THE COURT:** Perfect.

8           **MS. DERFERT:** Yes.

9           **THE COURT:** Perfect.  So you've got plenty of people

10  to talk to, Ms. Derfert.  And, again, I promise you that they

11  will all be super polite and you don't have a reason to be

12  fearful about calling them that somebody will be mad at you

13  or -- or unprofessional.  They'll all treat you well.

14          I'm convinced that I'd like to get briefing from

15  the Human Rights Division on the limited view of their

16  jurisdiction to proceed in the face of the arbitration

17  agreement.

18          So I will permit them to intervene, give you two

19  weeks to -- two weeks is reasonable, Ms. Sobkowski?  Is that

20  enough time?

21          **MS. SOBKOWSKI:** Yes, thank you.  Yes.  So

22  August 15th?

23          **THE COURT:** August 15th, that's a Saturday.  So

24  let's say the -- the 17th, which is the Monday.  So you've got

25  plenty of time.

1          **MS. SOBKOWSKI:** Okay, perfect.

2          **MS. LUNETTA:** Your Honor, would you mind pushing

3  that -- pushing her deadline out to the 19th and giving me two

4  weeks from that?  I'm taking the Florida bar on the 19th.

5          **THE COURT:** Oh, my goodness.  Sorry to lose you.

6  All right, August 19th and --

7          **MS. DERFERT:** Good luck.

8          **MS. LUNETTA:** I'm just adding.

9          **THE COURT:** Two weeks from that will take you to

10  September 3.  Is that reasonable?

11          **MS. LUNETTA:** That's great, thank you.

12          **THE COURT:** All right. And the -- I'll make a little

13  entry so this is all captured, but the TRO will remain in

14  effect until the Court can rule on the -- on the issue really

15  raised by -- what motion is going to kind of drive this?

16          I mean, we had the petition.  Are you going to file

17  a motion, Ms. Sobkowski, or -- I'm trying to think

18  procedurally what am I going to rule on in the end?

19          **MS. SOBKOWSKI:** Initially we were here to file a

20  motion to intervene, but that seems --

21          **THE COURT:** You're welcome in the case, yeah.

22          **MS. SOBKOWSKI:** Okay, thank you, right.  So we -- we

23  could make a petition for cross -- let's think.

24          **THE COURT:** Give it some thought.  But you give me

25  something I can get my teeth into one way or the other.

1            **MS. SOBKOWSKI:** Right.

2            **THE COURT:** Motion to dismiss or whatever it is.

3            **MS. SOBKOWSKI:** Okay.  Sure, but let me think about

4    it.  Again, I don't do a lot of federal practice, so I'm going

5    to have to go back and sit down and think about how that would

6    work.  Okay, something along the lines of a motion to dismiss

7    the petition?

8            **THE COURT:** Right.

9            **MS. SOBKOWSKI:** Okay.

10           **THE COURT:** Right.  It's a straight legal issue.

11   There's no --

12           **MS. SOBKOWSKI:** Yeah, okay.

13           **THE COURT:** And I'll look forward to hearing from

14   both of you.  And then this has been so most -- much fun and

15   pleasant, I'll set up a Zoom conference to go over the papers

16   at the end in early September , okay?

17           All right, nice to see you all.  Anything more?

18           **MS. LUNETTA:** Thank you, Your Honor, have a good

19   day.

20           **MS. SOBKOWSKI:** Thank you.

21           **MS. DERFERT:** Thank you.

22           (**WHEREUPON**, proceedings adjourned at 12:19 p.m.)

23                          *    *    *

24

25

1        **CERTIFICATE OF TRANSCRIBER**

2

3        In accordance with 28, U.S.C., 753(b), I certify that

4   this is a true and correct record of proceedings from the

5   official electronic sound recording of the proceedings in the

6   United States District Court for the Western District of New

7   York before the Honorable Geoffrey W. Crawford on July 29th,

8   2020.

9

10  S/ Christi A. Macri

11  Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
    Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25