UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHARTER COMMUNICATIONS, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-915 |
| | ) | |
| LYNDA M. DERFERT, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NEW YORK STATE DIVISION OF | ) | |
| HUMAN RIGHTS, | ) | |
| | ) | |
| Respondent-Intervenor. | ) | |

**ORDER ON PETITIONER'S MOTION TO COMPEL ARBITRATION AND TO
ENJOIN RESPONDENT FROM PURSUING CLAIMS OUTSIDE OF ARBITRATION
AND ON RESPONDENT-INTERVENOR'S MOTION TO DISMISS PETITIONER'S
SECOND CLAIM FOR INJUNCTIVE RELIEF
(Docs. 3, 15)**

On June 11, 2018, Lynda M. Derfert filed a complaint with the New York State Division

of Human Rights ("NYSDHR" or the "Division") asserting an employment-discrimination claim

against Charter Communications, Inc. ("Charter") based on allegations that Charter

discriminatorily rescinded a conditional offer of employment due to Ms. Derfert's arrest and

conviction records.  (*See* Doc. 1 ¶ 18; *see also* Doc. 3-3 (NYSDHR Verified Complaint).)

Relying on a Mutual Arbitration Agreement that Ms. Derfert agreed to after receiving the

conditional employment offer (*see* Docs. 3-15, 3-16), Charter has filed in this court a Petition to

Compel Arbitration, naming Ms. Derfert as the Respondent.  (Doc. 1.)

Simultaneously with its July 17, 2020 Petition, Charter filed a "Motion to Compel

Arbitration and to Enjoin Respondent from Pursuing Claims Outside of Arbitration."  (Doc. 3.)

That motion is currently pending.  Also pending is Respondent-Intervenor NYSDHR's "Motion to Dismiss Petitioner's Second Claim for Injunctive Relief."  (Doc. 15.)  Ms. Derfert, who represents herself, has not filed any papers taking a position on the pending motions.

## Background

Charter's Petition includes the following allegations.  On or about September 20, 2017, Ms. Derfert applied for a position with Charter as a Customer Care Representative I.  (Doc. 1 ¶ 12.)  The application asked, among other things, whether she would complete a pre-employment drug test and background check after receiving and accepting an offer of employment.  Ms. Derfert responded that she would.  (*Id.*)  On or about October 17, 2017, Ms. Derfert received a conditional offer of employment at Charter, contingent upon, among other things, passing a drug test and background check.  (*Id.* ¶ 13.)

Charter's consideration of Ms. Derfert for employment was also contingent upon her acceptance of Charter's Mutual Arbitration Agreement (the "Arbitration Agreement" or "Agreement"), which she entered into on October 17, 2017.  (*Id.* ¶ 14.)  The Agreement provides that all "Covered Claims" will be resolved by final and binding arbitration.  (*Id.* ¶ 15.)  "Covered Claims" include "[a]ll disputes, claims, and controversies . . . related to [Respondent's] pre-employment, employment, employment termination, or post-employment."  (*Id.* (alterations in original).)  "Covered Claims" also include "statutory claims (whether under local, state or federal law) . . . including without limitations claims for . . . unlawful failure to hire . . . unlawful discrimination . . . [and] claims related to background and any and all other pre-employment and employment checks."  (*Id.* (alterations in original).)  The Agreement permits Ms. Derfert to file and pursue claims before federal, state, or local administrative agencies, but it explicitly provides

that "if [Respondent] choose[s] to pursue the [administrative] claim, any proceeding on the merits or for damages will be subject to arbitration." (*Id.* ¶ 16 (alterations in original).)

On November 9, 2017, relying on the information in Ms. Derfert's Background Report provided by a third-party background-check vendor, and considering the factors in Article 23-A of the New York Corrections Law, Charter rescinded the conditional offer of employment. (*Id.* ¶ 17.)

On June 11, 2018, Ms. Derfert filed a complaint with the NYSDHR, asserting a claim of unlawful discrimination under Section 296 of the New York State Human Rights Law, and alleging that Charter discriminatorily rescinded the conditional employment offer on the basis of Ms. Derfert's arrest and conviction records. (*Id.* ¶ 18; *see also* Doc. 3-3 (NYSDHR Verified Complaint).) The title and caption of the Verified Complaint read as follows:

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>LYNDA M. DERFERT,<br>                              Complainant,<br><br>                    v.<br><br>CHARTER COMMUNICATIONS, INC.,<br>                              Respondent. | VERIFIED COMPLAINT<br>Pursuant to Executive Law, Article 15<br><br>Case No.<br>**10195081** |

(Doc. 3-3 at 2.) Ms. Derfert signed a "Notarization of Complaint" stating "I charge the herein named respondent(s) with an unlawful discriminatory practice" and authorizing NYSDHR to "accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission." (*Id.* at 29.)

On September 25, 2018, Charter submitted a position statement to NYSDHR that, among

other things, attached a copy of the Agreement and notified Ms. Derfert and NYSDHR of

Ms. Derfert's alleged "obligation to arbitrate should the matter proceed to an adjudication on the

merits." (Doc. 1 ¶ 19.)  On December 4, 2018, NYSDHR issued a "probable cause"

determination and recommended the matter for a public hearing.  (*Id.* ¶ 20; *see also* Doc. 3-5.)

On or about March 10, 2020, Charter received a notice from NYSDHR ordering Charter

to appear on April 15–16, 2020 for a two-day hearing on the merits.  (Doc. 1 ¶ 21.)  On or about

March 31, 2020, Charter received an email from NYSDHR's Chief Calendar Clerk advising that

the hearing scheduled for April 15–16, 2020 had been adjourned and that Charter would receive

a new hearing date.  (*Id.* ¶ 22.)  In a letter dated April 9, 2020, Charter notified Ms. Derfert of

Charter's position that the claim she asserted in the NYSDHR proceeding was subject to

mandatory arbitration under the Agreement.  (*Id.* ¶ 27; *see also* Doc. 3-8.)

On or about June 16, 2020, Charter received a notice from the Chief Calendar Clerk

advising that the matter was scheduled for a preliminary conference before an administrative law

judge ("ALJ") on July 13, 2020.  (Doc. 1 ¶ 23.)  The notice stated that "the parties should be

prepared to discuss the legal and factual issues in the case, the documentary evidence in their

control which is to be offered in evidence, and proposed witnesses."  (*Id.*)  NYSDHR later

rescheduled the preliminary conference for August 4, 2020.  (*Id.* ¶ 24.)  On July 15, 2020,

Charter's counsel spoke with NYSDHR's counsel, Neil Zion, who indicated that the hearing on

the merits was projected to take place in September 2020.  (*Id.* ¶ 25.)

Ms. Derfert has refused to withdraw the discrimination claim she filed with the

NYSDHR.  (*Id.* ¶ 28.)  Charter filed its Petition in this court on July 17, 2020.  (Doc. 1.)  Charter

seeks an order under 9 U.S.C. § 4 compelling Ms. Derfert to arbitrate her pending discrimination

4

claim.  (*Id.* at 7.)  Charter further seeks an order "for temporary, preliminary, and permanent injunctive relief enjoining Respondent from pursuing a claim for employment discrimination in any forum outside or arbitration under the Agreement."  (*Id.*)

### Procedural History

Simultaneously with its July 17, 2020 Petition, Charter filed a "Motion to Compel Arbitration and to Enjoin Respondent from Pursuing Claims Outside of Arbitration."  (Doc. 3.)  The court held a hearing on that motion on July 29, 2020.  (*See* Doc. 16 (transcript).)  At that hearing, with the agreement of Charter and Ms. Derfert, the court issued a temporary restraining order requiring NYSDHR to postpone its proceeding until the court received briefing and had an opportunity to rule on Charter's motion.  The court also permitted NYSDHR to intervene and to offer briefing regarding its jurisdiction to proceed in the face of the arbitration Agreement.

On August 19, 2020, NYSDHR filed its "Motion to Dismiss Petitioner's Second Claim for Injunctive Relief."  (Doc. 15.)  Charter filed an opposition on September 10, 2020. (Doc. 22.)  NYSDHR filed its reply on September 17, 2020.  (Doc. 24.)  Charter filed a sur-reply on September 21, 2020.  (Doc. 28.)

### Analysis

Charter's Petition and its pending motion to compel and enjoin both seek: (1) an order under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), compelling Ms. Derfert to arbitrate her pending discrimination claim (Charter's "Compel Claim"), and (2) an order under Fed. R. Civ. P. 65 enjoining Ms. Derfert from pursuing the adjudication of that claim outside of arbitration (Charter's "Enjoin Claim").  (*See* Doc. 1 at 7; Doc. 3-1 at 18.)  NYSDHR states that it takes no position as to "whether Charter will succeed on the merits of their petition to compel arbitration" under the FAA.  (Doc. 15-9 at 20.)  But NYSDHR seeks dismissal under Fed. R.

Civ. P. 12(b)(6) of the Enjoin Claim.  (*See* Doc. 15 at 2.)  In short, NYSDHR does not oppose an arbitration proceeding between Charter and Ms. Derfert, but NYSDHR maintains that Charter cannot prevent a *parallel* NYSDHR proceeding to "investigat[e] or enforc[e] the Human Rights Law on the complaint of Derfert." (Doc. 15-9 at 5.)  The court accordingly begins with Charter's Enjoin Claim.

## I.    Charter's Enjoin Claim

NYSDHR maintains that granting the Enjoin Claim "would have the effect of interfering with the agency's ability to conduct an administrative hearing on the merits of Derfert's complaint." (Doc. 15-9 at 5.)  NYSDHR asserts that it is not a party to the Arbitration Agreement and that it has the power under New York statutory law to proceed on Ms. Derfert's complaint.  (*Id.* at 7, 16.)  NYSDHR further contends that Charter has not satisfied the requirements for granting a permanent injunction.  (*Id.* at 19.)  In support, NYSDHR relies on *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), and maintains that *Preston v. Ferrer*, 552 U.S. 346 (2008), is distinguishable.

Opposing NYSDHR's Rule 12(b)(6) motion, Charter asserts that: (1) it has satisfied the requirements for injunctive relief; (2) NYSDHR lacks standing to oppose the Enjoin Claim; and (3) each of NYSDHR's arguments opposing such relief lacks merit.  (Doc. 22 at 2.)  Charter insists that *Preston*, not *Waffle House*, controls in this case.

### A.    Legal Standards

"To obtain an injunction from a district court, movants generally bear the burden of showing that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 225–26

(2d Cir. 2020) (per curiam) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "To prevail on a motion for a permanent injunction, a plaintiff must both succeed on the merits and demonstrate the 'absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016) (quoting *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)).

Generally, to survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 8(a)(2). The court must draw all reasonable inferences in the non-moving party's favor. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

### B.    Standing

Charter argues that, as a threshold matter, NYSDHR lacks standing to oppose Charter's Enjoin Claim. (Doc. 22 at 11.) Charter asserts that it is not seeking to enjoin NYSDHR but to enjoin *Ms. Derfert* from pursuing claims outside of arbitration, and that NYSDHR cannot rely on Ms. Derfert's rights or interests to substitute for NYSDHR's lack of standing. (*Id.* at 12.) NYSDHR maintains that it is a proper intervenor and that it has a "direct, substantial and legally protectable interest in eliminating employment discrimination in New York State." (Doc. 24 at 2.)

The Supreme Court has held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town*

*of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).  Assuming that NYSDHR

is a permissive intervenor under Fed. R. Civ. P. 24(b) and that the *Town of Chester* requirement

applies to permissive intervenors, Charter's standing argument fails.  NYSDHR is not seeking

relief that is different than that which Ms. Derfert seeks.  Ms. Derfert is *opposing* Charter's

claims for injunctive relief.  To the extent that such opposition seeks "relief," NYSDHR seeks

nothing more than Ms. Derfert does.  Indeed, at the July 29, 2020 hearing, NYSDHR stated that

it would endeavor to "defend the position that Ms. Derfert is permitted by law to go forward . . .

before the Human Rights Division."  (Doc. 16 at 8.)

> **C.     Merits**

The court turns next to whether Charter has satisfied the success-on-the-merits

requirement for the relief it seeks in the Enjoin Motion.  The court assumes, without deciding,

that the Arbitration Agreement is valid and enforceable.  The parties' positions on this issue arise

from their differing views as to whether *Waffle House* or *Preston* controls here.  The court begins

by briefly reviewing both of those Supreme Court decisions.

> **1.     *Waffle House***

In *Waffle House*, Eric Baker applied for employment with Waffle House, Inc. ("Waffle

House") and, in his application for employment, agreed that "any dispute or claim" concerning

his employment would be "settled by binding arbitration."  *Waffle House*, 534 U.S. at 282.

Sixteen days after starting work at one of Waffle House's restaurants, Baker suffered a seizure at

work; Waffle House terminated his employment soon thereafter.  *Id.* at 283.  Baker did not

initiate arbitration proceedings, but he did file a timely discrimination charge with the Equal

Employment Opportunity Commission ("EEOC") alleging that his discharge violated the

Americans with Disabilities Act ("ADA").  *Id.*

The EEOC filed an enforcement action against Waffle House in federal district court under § 107(a) of the ADA, 42 U.S.C. § 12117(a), and under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. *See id.*  Baker was not a party to the case, but the EEOC filed the action in its name "both in the public interest and on behalf of Baker." *Id.* at 284.  Waffle House filed a petition under the FAA to stay the EEOC's suit and compel arbitration, or to dismiss the action. *Id.*

At the Supreme Court, the question was "whether an agreement between an employer and an employee to arbitrate employment-related disputes bars the [EEOC] from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement action alleging that the employer has violated Title I of the [ADA]." *Id.* at 282.  The Supreme Court answered no, reasoning that the relevant statutes "do not authorize the courts to balance the competing policies of the ADA and the FAA or to second-guess the agency's judgment concerning which of the remedies authorized by law that it shall seek in a given case." *Id.* at 297.  The Court stated that "whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief." *Id.* at 296.

### 2. *Preston*

Six years after deciding *Waffle House*, the Supreme Court issued its decision in *Preston*. *Preston* involved a contract between a television personality, Alex E. Ferrer, and Arnold M. Preston, a lawyer who rendered services to people in the entertainment industry.  Preston claimed the he was entitled to fees under the contract and invoked an arbitration clause in the contract.  A month after Preston's arbitration demand, Ferrer filed a petition with the California Labor

Commissioner charging that the contract was invalid and unenforceable under the California Talent Agencies Act ("TAA"), and that Preston acted as a talent agent without the requisite TAA license, thereby rendering the contract void. 552 U.S. at 350.

In the Supreme Court, the question was: "Does the FAA override not only state statutes that refer certain state-law controversies initially to a judicial forum, but also state statutes that refer certain disputes initially to an administrative agency?" *Id.* at 349. The Court held that "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." *Id.* at 349–50. The *Preston* Court distinguished *Waffle House*, noting that under the relevant provision of the TAA, "the Labor Commissioner functions not as an advocate advancing a cause before a tribunal authorized to find the facts and apply the law; instead, the Commissioner serves as an impartial arbiter." *Id.* at 359. In a footnote, the Court stated: "Enforcement of the parties' arbitration agreement in this case does not displace any independent authority the Labor Commissioner may have to investigate and rectify violations of the TAA." *Id.* at 359 n.7. *Waffle House*, the *Preston* Court reasoned, involved "the role of an agency, not as adjudicator but as prosecutor, pursuing an enforcement action in its own name or reviewing a discrimination charge to determine whether to initiate judicial proceedings." *Id.*

### 3.    NYSDHR's Role

NYSDHR is a division within the New York executive department. N.Y. Exec. L. § 293. New York's Human Rights Law authorizes "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice" to file a verified complaint with NYSDHR. *Id.* § 297(1). NYSDHR may also file such a complaint on its own motion. *Id.* After a complaint is filed, NYSDHR is required to serve all necessary parties and to "make a prompt investigation." *Id.*

§ 297(2)(a).  NYSDHR must then determine whether it has jurisdiction and whether there is

"probable cause" to believe that the respondent has engaged in or is engaging in unlawful

discriminatory practice.  *Id.*

Unless NYSDHR dismisses the complaint or there is a "conciliation agreement,"

NYSDHR must then schedule a "public hearing before a hearing examiner."  *Id.* § 297(4)(a).

The hearing examiner must be independent of the investigation or any settlement process.

*See id.* ("No person who shall have previously made the investigation, engaged in a conciliation

proceeding or caused the notice to be issued shall act as a hearing examiner in such case.").  The

applicable regulations state that such hearings "shall be conducted by an administrative law

judge designated by the division."  9 NYCRR § 465.12(d)(1).

At the public hearing, "[t]he case in support of the complaint shall be presented by one of

the attorneys or agents of the division and, at the option of the complainant, by his or her

attorney."  N.Y. Exec. L. § 297(4)(a).  "With the consent of the division, the case in support of

the complaint may be presented solely by his or her attorney."  *Id.*  The hearing examiner has

discretion to "permit any person who has a substantial personal interest to intervene as a party,

and may require that necessary parties not already parties be joined."  *Id.*  The testimony at the

public hearing must be under oath and a record must be made, but the hearing examiner is not

bound by the rules of evidence.  *Id.*

After the public hearing, the hearing examiner must render a "determination," together

with findings of fact and an appropriate order.  *Id.* § 297(4)(c).  If the examiner determines that

the respondent engaged in any unlawful discriminatory practice, the order may require the

respondent to "cease and desist from such unlawful discriminatory practice" and may grant relief

specific to the complainant such as "hiring, reinstatement or upgrading of employees, with or

without back pay," and awards of compensatory or punitive damages to the aggrieved person. *Id.*

As an alternative to the administrative process described above, the aggrieved person may elect to proceed in court. *See id.* § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder . . . ."). But the mere filing of a complaint with NYSDHR does not irrevocably preclude the aggrieved person from proceeding in court. Under § 297(9), "[a]t any time prior to a hearing before a hearing examiner, a person who has a complaint pending at the division may request that the division dismiss the complaint and annul his or her election of remedies so that the human rights law claim may be pursued in court . . . ."

### 4.     Synthesis: *Waffle House*, *Preston*, and NYSDHR Procedure

NYSDHR asserts that the New York State Human Rights Law empowers it to both prosecute and adjudicate complaints that have been issued a "probable cause" determination. (Doc. 15-9 at 16.) NYSDHR maintains that it is like the EEOC in *Waffle House* because it is a "public agency acting in its prosecutorial capacity to bring an enforcement action against Charter, independent of Derfert's own claims, in order to protect the public interest under the New York State Human Rights Law." (*Id.* at 17.) Charter disagrees, arguing that in this case NYSDHR "would be the ***adjudicator*** of Derfert's discrimination claim, as is evident given that the Division scheduled a hearing on the merits before an impartial NYSDHR administrative law judge." (Doc. 22 at 15.) In Charter's view, *Preston* controls the outcome in this case.

The court agrees with NYSDHR that under New York law the Division performs both prosecutorial and adjudicative functions. This case is therefore unlike *Waffle House* insofar as

the EEOC in that case was acting solely as an advocate before an independent tribunal.  And this case is also unlike *Preston* insofar as the Labor Commissioner in that case functioned solely as an impartial adjudicator.  For the reasons that follow, the court concludes that this case is more like *Waffle House* than like *Preston*.

Here, Ms. Derfert and Charter entered into the Arbitration Agreement under which they mutually committed to arbitrate all employment-related claims, including discrimination claims. The Agreement recognized the possibility that Ms. Derfert might choose to pursue a claim before an administrative agency, but stipulated that any such proceeding "on the merits or for damages will be subject to arbitration." (Doc. 1 ¶ 16.)  Since Ms. Derfert and Charter agreed to arbitrate such issues, "state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." *Preston*, 552 U.S. at 349–50.  But such "jurisdiction" refers to jurisdiction "to *decide* an issue that the parties agreed to arbitrate." *Id.* at 356 (emphasis added).  The FAA does not supersede an agency's authority to act "as prosecutor, pursuing an enforcement action in its own name or reviewing a discrimination charge to determine whether to initiate judicial proceedings." *Id.* at 359 (citing *Waffle House*); *see also id.* at 359 n.7 ("Enforcement of the parties' arbitration agreement in this case does not displace any independent authority the Labor Commissioner may have to investigate and rectify violations of the TAA.").

It is true that, once the proceeding advances to the "public hearing" stage, an NYSDHR administrative law judge becomes involved and performs an adjudicative role.  But the court agrees with NYSDHR that this does not, by itself, transform NYSDHR into a mere "alternative forum" for resolving an employment-discrimination dispute. (Doc. 15-9 at 17.)  The Division continues to prosecute the claim before the administrative law judge.  The purpose of the

prosecution is to rectify violations of New York's Human Rights Law and vindicate the public interest in preventing discrimination that impinges on "the rights and proper privileges" of New Yorkers, "the institutions and foundations of a free democratic state," and the "peace, order, health, safety and general welfare of the state and its inhabitants." N.Y. Exec. L. § 290(3). Even in cases where an attorney for the complainant presents the case, the Division must give its consent—evidence of the Division's continuing interest in the case.

It is also true that, under N.Y. Exec. L. § 297(1), the Division is empowered to sign and file a complaint alleging unlawful discriminatory practice. *See* 9 NYCRR § 465.3(a)(3) ("On its own motion, or on the application of an interested person, the division may initiate its own complaint."). And the Division did not do so in this case. Here, Ms. Derfert filed the complaint; she is listed as the complainant and as the person charging Charter with unlawful discriminatory practice relating to employment. (Doc. 3-3 at 2.) On the other hand, although Ms. Derfert is the complainant, the claim is being prosecuted in NYSDHR's name. (*See id.* (complaint caption stating: "NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of LYNDA M. DERFERT, Complainant.").) The fact that the Division did not sign and file the complaint on its own motion does not change the fundamental nature of the proceeding.

NYSDHR argues that *all* complaints filed with the Division—whether raised by an individual or in a Division-initiated complaint—are "pursued to vindicate the public interest in the name of NYSDHR." (Doc. 24 at 3.) Charter responds: "Putting aside whether this sweeping statement is true, it is beside the point." (Doc. 28 at 4.) The point, according to Charter, is twofold. First, Charter argues that under *Preston* "any state law or rule that would interfere with this Court's power to order Derfert to comply with her obligation to arbitrate her claim exclusively in arbitration is preempted by the FAA." (*Id.*) But that argument is itself too

broad—even *Preston* acknowledges that the FAA does not supersede an agency's authority to act as a prosecutor to pursue enforcement in its own name or review a discrimination charge. *Preston*, 552 U.S. at 359.

Second, Charter maintains that "what matters under *Preston* is whether the agency is pursuing its own claim or adjudicating the claim of an individual Complainant." (Doc. 28 at 2.) The court agrees that *Preston* focuses on the function that the agency is performing. As stated above, the fact that the administrative proceeding began with a complaint filed by Ms. Derfert rather than by the Division itself does not change the fundamental nature of the proceeding.

### 5.   *Joulé*

The decision of the court in *Joulé, Inc. v. Simmons*, 944 N.E.2d 143 (Mass. 2011), provides non-binding guidance. As in this case, the plaintiff in *Joulé* was an employer that brought suit for a declaration that an arbitration agreement with its former employee, Randi Simmons, required her to submit her employment discrimination complaint to arbitration. Simmons had not initiated arbitration proceedings, but she did file a complaint with the Massachusetts Commission Against Discrimination (MCAD).

MCAD's procedure for investigating discrimination complaints closely resembles NYSDHR's procedure. *Cf. id.* at 148 (summarizing MCAD procedure). Massachusetts law creates the MCAD, which is charged with a duty to, among other things, "receive, investigate and pass upon complaints of unlawful practices, as hereinafter defined, alleging discrimination . . . ." Mass. Gen. Laws ch. 151B, § 3(6). As with the initiation of the process in NYSDHR, the MCAD process can be initiated by the individual claiming to be aggrieved or by the MCAD itself. *Id.* § 5. After a complaint is filed, the MCAD chairman designates one

commissioner to make an investigation and determine whether "probable cause" exists for crediting the allegations of the complaint. *Id.*

If the commissioner finds such probable cause, and the complainant and respondent do not elect a judicial determination and do not resolve the complaint by conciliation, the commissioner then notices a "hearing before the commission." *Id.* The case in support of the complaint is presented by an MCAD attorney or agent or by an attorney retained by the complainant. The commissioner who made the investigation does not participate in the hearing except as a witness, and does not participate in the deliberations except as necessary to decide an appeal to the full commission. The complainant may be allowed to intervene and present testimony. If, after the hearing, the MCAD finds that the respondent engaged in an unlawful practice as defined in the statute, it may require the respondent to "cease and desist from such unlawful practice," and may grant relief specific to the complainant, including "hiring, reinstatement or upgrading of employees, with or without back pay." *Id.*

The *Joulé* court held that the arbitration provision in the employment agreement between Joulé and Simmons did not preclude the MCAD from "proceeding with its investigation and resolution of Simmons's discrimination complaint—including, if the evidence warrants, granting relief specific to Simmons." *Joulé*, 944 N.E.2d at 149. The court found *Waffle House* to be analogous and distinguished *Preston* because the MCAD was prosecuting a claim in its own name and rectifying violations of state anti-discrimination law in the public interest. *Id.* at 150 & n.10.

As discussed above, the same is true in this case. Notably, the *Joulé* court went on to state that, assuming the arbitration agreement was valid, the court agreed with Joulé that "beyond filing a complaint with the MCAD, under the arbitration provision, Simmons is barred from

being a litigant or party to the MCAD proceeding." *Id.* at 151. The court observed that "[w]hen

a complainant files a request to intervene, . . . she must certify her 'allegations of

discrimination.'" *Id.* (quoting 804 Code Mass. Regs. § 1.20(3)(a) (2004)). The court reasoned:

> Thus, in essence, the complainant is required to advance a claim of discrimination
> in her own name. Allowing Simmons to seek to intervene as a party to the MCAD
> proceeding and to assert directly her individual claim of discrimination would
> contravene the requirement of the arbitration provision that she resolve her own
> disputes with Joulé through arbitration. The question whether Simmons may
> participate in the MCAD proceeding is a different matter. Nothing in the arbitration
> provision prevents her from testifying before the MCAD . . . .

*Id.*

Here, although N.Y. Exec. L. § 297(4)(a) appears to contemplate the possibility of a

complainant seeking to intervene as a party, there is no allegation or evidence that Ms. Derfert

has sought that status in the NYSDHR proceeding. As long as that remains true, this court

agrees with the analysis in *Joulé* and concludes that the Arbitration Agreement does not bar the

proceeding in the Division.

Charter seeks to distinguish *Joulé*, citing a passage from that decision summarizing the

MCAD procedure where the court stated: "[I]f the investigating commissioner determines that

the public interest requires a certification of issues to public hearing, the commissioner issues a

complaint in the name of the MCAD." *Joulé*, 944 N.E.2d at 148 (citing 804 Code Mass. Regs.

§ 1.20(3) (2004)). Charter contends that such a post-probable-cause "complaint" in MCAD's

name makes *Joulé* different because the only complaint in this case is the "Verified Complaint"

that Ms. Derfert filed.

The Massachusetts regulations indeed included the language that the *Joulé* court cited.

*See* 804 Code Mass. Regs. § 1.20(3) (2004) ("When the Investigating Commissioner believes

that the public interest requires a certification of issues to public hearing, she or he shall issue a

complaint in the name of the Commission, pursuant to M.G.L. c. 151B, § 5."). But the court

cannot conclude that reference to such a (second) "complaint" is the linchpin that separates this case from *Joulé*. The teachings of *Waffle House* and *Preston* indicate that the court must focus on the function being performed. Drawing the distinction for which Charter advocates would elevate procedure over that functional analysis. In addition, the court notes that the Massachusetts regulations currently in force do not call the certification a "complaint" but instead refer to it as a "certification order." *See* 804 Code Mass. Regs. § 1.11(1) (2020).

  **6.**   *Prowse*

  Charter relies upon *UBS Securities LLC v. Prowse*, No. 20cv217 (JGK), 2020 WL 433859 (S.D.N.Y. Jan. 27, 2020), which Charter asserts is directly on point. In that case, Vanessa Prowse's former employer, UBS Securities LLC ("UBS") sought to enjoin her from pursuing a retaliation claim before the New York State Workers' Compensation Board (the "Board") and to compel her to submit that claim to arbitration under an arbitration agreement that she had signed. *Id.* at *1. In analyzing whether Prowse's retaliation claim was covered by the scope of the arbitration agreement, the court considered language in the agreement stating that "[n]othing in this Arbitration Agreement shall prohibit you from filing a charge or complaint with the [EEOC, NLRB, OSHA] or any other federal, state or local administrative agency." *Id.* at *5 (alterations in original). The court reasoned that that provision

> simply tracks a distinction found in the case law between agencies acting as independent prosecutors that may independently bring actions against employers when acting on employees' complaints notwithstanding the existence of a valid arbitration agreement between the employee and the employer, and agencies that, when acting as adjudicators, may not adjudicate claims between employers and employees when a valid arbitration agreement commits those disputes to arbitration

*Id.* (citing *Waffle House*, 534 U.S. at 290–91, and *Preston*, 552 U.S. at 359). The *Prowse* court noted that Prowse sought to engage the Board "in its adjudicative capacity, in order to have the Board determine whether the respondent should prevail against the petitioner on her Section 120

18

[retaliation] claim." *Id.* The court concluded that the cited clause was inapposite because the Board would be "acting as an adjudicator," not as "an independent prosecutor." *Id.*

NYSDHR argues that *Prowse* is itself inapposite because the Board in that case was acting as an impartial arbiter rather than a prosecutor. (Doc. 15-9 at 19.) The court agrees. *Prowse* involved a different statutory scheme and a different entity (the Board rather than NYSDHR). The Board in *Prowse* would have acted in its adjudicative capacity. As the *Prowse* court explained, "the Board does not act as a prosecutor when an employee brings a Section 120 claim." *Prowse*, 2020 WL 433859, at *7.

### D.    Remaining Factors for Injunctive Relief

The above analysis indicates that Charter has failed to show a likelihood of success on the merits of its Enjoin Claim. Since such a showing is essential to obtaining a preliminary injunction, it may be unnecessary to discuss the remaining factors. *See Seneca Nation of Indians v. Paterson*, No. 10-CV-687A, 2010 WL 4027795, at *2 (W.D.N.Y. Oct. 14, 2010) (failure to demonstrate likelihood of success on the merits was fatal to preliminary-injunction motion); *see also Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994) ("Because, irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits *and* irreparable harm . . . , the district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors."). The court nevertheless elects to briefly address whether any of the remaining injunctive-relief factors favor Charter. *See Williams Advanced Materials, Inc. v. Target Tech. Co.*, No. 03-CV-276-A, 2004 WL 1811397, at *18 (W.D.N.Y. Aug. 11, 2004) (briefly addressing remaining factors after concluding that movant had failed to establish likelihood of success on the merits).

Charter asserts that it will suffer irreparable harm in the absence of injunctive relief. (Doc. 3-1 at 16.) As Charter points out, "[l]osing the ability to enforce an arbitration agreement is a form of irreparable harm." *Prowse*, 2020 WL 433859, at *7 (alteration in original; quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Seneca Family of Agencies*, 255 F. Supp. 3d 480, 490 (S.D.N.Y. 2017)). NYSDHR argues that Charter has failed to show any irreparable harm. (*See* Doc. 15-9 at 20 ("If Charter establishes they have an enforceable agreement, Derfert may well be compelled to arbitrate her claims."); Doc. 24 at 5 (arguing that NYSDHR's statutory authority to enforce the Human Rights Law is not undermined by the possibility of a parallel proceeding in arbitration).) Charter insists that parallel proceedings are precluded by *Preston*. (Doc. 28 at 3.)

For the reasons stated above, failure to succeed on its Enjoin Claim will not cause Charter to lose any right to arbitrate to which it is entitled. Provided that Ms. Derfert does not intervene as a party in the NYSDHR proceedings, the Arbitration Agreement is not implicated by the progression of those proceedings to a public hearing. Assuming that Ms. Derfert does not request dismissal of her NYSDHR complaint and an annulment of her election of remedies under N.Y. Exec. L. § 297(9), that provision will preclude her from bringing a cause of action *in court*, but she may arguably retain the ability to bring her own claim against Charter in an arbitral forum under the Arbitration Agreement.

If Ms. Derfert brings such a claim under the Agreement, then Charter would be litigating in two proceedings: the NYSDHR proceeding and the arbitration. Charter cites *Sanford L.P. v. Esselte AB*, No. 14-CV-7616 (VSB), 2015 U.S. Dist. LEXIS 193868, at *6–7 (S.D.N.Y. Sept. 16, 2015), for the proposition that "a party suffers irreparable harm when it is forced to litigate on a second front in a non-arbitral forum that it contracted to avoid." But the *Sanford* court's

statement was in the context of forum-selection clauses; the case did not involve arbitration at all.  Moreover, as *Waffle House* and *Preston* suggest, Charter cannot use the Arbitration Agreement in a contract to avoid or undermine New York state law providing for an independent NYSDHR investigation and public hearing.  For the same reason, the balance of equities and the public interest also weigh against issuing the injunction that Charter seeks.

## II.   **Charter's Compel Claim**

Charter's Compel Claim is a request for an order under 9 U.S.C. § 4 "compelling Respondent to arbitrate her pending discrimination claim."  (Doc. 1 at 7; *see also* Doc. 3-1 at 18 (requesting that the court "compel Respondent's discrimination claim to arbitration").)  NYSDHR has stated that it takes no position as to "whether Charter will succeed on the merits of their petition to compel arbitration."  (Doc. 15-9 at 20.)

Section 4 of Title 9 provides, in pertinent part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  Here, for the reasons stated above, the contemplated public hearing in the NYSDHR proceeding does not constitute a failure, neglect, or refusal on Ms. Derfert's part to honor the Arbitration Agreement.  Ms. Derfert has not instituted any proceeding in her own name against Charter based on her allegations of employment discrimination.  Insofar as the Compel Claim seeks either to compel Ms. Derfert to institute an arbitration proceeding (which thus far she has not elected to attempt) or to remove the NYSDHR proceeding into an arbitral forum, neither such remedy would be appropriate.

## Conclusion

The New York State Division of Human Rights's Motion to Dismiss (Doc. 15) is

GRANTED.

Charter Communications, Inc.'s Motion to Compel Arbitration and to Enjoin Respondent

from Pursuing Claims Outside of Arbitration (Doc. 3) is DENIED insofar as it seeks to halt the

NYSDHR proceedings in favor of an arbitration.  This ruling is without prejudice to Charter

renewing its request should Ms. Derfert seek to intervene as a party in the NYSDHR proceedings

or if she seeks to institute a civil action in court based on her alleged discrimination claims

against Charter.

Dated this 4th day of January, 2021.

Geoffrey W. Crawford, Judge
United States District Court