UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC., | ) |
| Petitioner, | ) |
| v. | ) Case No. 1:20-cv-915 |
| LYNDA M. DERFERT, | ) |
| Respondent, | ) |
| and | ) |
| NEW YORK STATE DIVISION OF HUMAN RIGHTS, | ) |
| Respondent-Intervenor. | ) |

**ORDER ON PETITIONER'S MOTION FOR RECONSIDERATION AND MOTION FOR INJUNCTION**
**(Docs. 31, 38)**

On June 11, 2018, Lynda M. Derfert filed a complaint with the New York State Division of Human Rights ("NYSDHR" or the "Division") asserting an employment-discrimination claim against Charter Communications, Inc. ("Charter") based on allegations that Charter discriminatorily rescinded a conditional offer of employment due to Ms. Derfert's misdemeanor arrest and conviction record. (*See* Doc. 1 ¶ 18; *see also* Doc. 3-3 (NYSDHR Verified Complaint).) Relying on a Mutual Arbitration Agreement that Ms. Derfert agreed to after receiving the conditional employment offer (*see* Docs. 3-15, 3-16), Charter filed in this court a Petition to Compel Arbitration, naming Ms. Derfert as the Respondent. (Doc. 1.) Simultaneously with its July 17, 2020 Petition, Charter filed a "Motion to Compel Arbitration and to Enjoin Respondent from Pursuing Claims Outside of Arbitration." (Doc. 3.)

The court denied Charter's motion to compel arbitration and granted NYSDHR's motion to dismiss Charter's second claim for injunctive relief on January 4, 2021. (Doc. 29.) The court entered judgment in favor of NYSDHR and Ms. Derfert and against Charter on January 6, 2021. (Doc. 30.) Two post-judgment motions are currently pending.

First, Charter seeks reconsideration of the January 4, 2021 Order under Fed. R. Civ. P. 59(e). (Doc. 31.) Charter contends that the court erroneously concluded that the Division (as opposed to Ms. Derfert) is prosecuting the action in the NYSDHR proceeding, and that "all relevant authority, as well as the Division's own published guidance, . . . make clear that the claim at issue *continues to belong to Derfert—**not** the Division*." (Doc. 31-1 at 5.) Second, Charter notes that it has been ordered to appear before an NYSDHR administrative law judge for an April 28, 2021 conference in advance of a merits hearing, and therefore Charter seeks a preliminary injunction enjoining NYSDHR and Ms. Derfert from continuing with the NYSDHR proceedings until the court has an opportunity to rule on the reconsideration motion. (Doc. 38.) The court held a hearing on the preliminary-injunction motion (Doc. 38) on March 4, 2021.

## Background

The court presumes familiarity with the factual background in the January 4, 2021 Order. (Doc. 29.) In the discussion below, the court briefly summarizes some of the main points in the January 4, 2021 Order.

## Analysis

### I.     Rule 59(e) Standard

Rule 59(e) authorizes the filing of a motion to alter or amend a judgment within 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). The standard for granting such a motion is strict; "reconsideration will generally be denied unless the moving party can point to controlling

2

decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Richard v. Dignean*, 126 F. Supp. 3d 334, 337 (W.D.N.Y. 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "A court may grant a Rule 59(e) motion only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (alteration in original; quotations omitted). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Richard*, 126 F. Supp. 3d at 337 (quotations omitted). Charter relies on the third criterion in this case. (Doc. 31-1 at 6.)

II. **Whether Proceeding with the Claim Before NYSDHR Comports with the Terms of the Arbitration Agreement**

In its January 4, 2021 Order, the court reviewed NYSDHR's role in handling complaints of unlawful discriminatory practice and considered the extent to which NYSDHR was like or unlike the governmental agencies in *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), and *Preston v. Ferrer*, 552 U.S. 346 (2008). (Doc. 29 at 10–15.) The court reasoned that NYSDHR performs both prosecutorial and adjudicative functions, making this case unlike *Waffle House* (where the EEOC acted solely as an advocate before a United States district court) and also unlike *Preston* (where the state Labor Commissioner functioned solely as an impartial adjudicator). (*Id.* at 12–13.) The court concluded that this case is more like *Waffle House* than *Preston*, focusing particularly on the function that NYSDHR performs, including the prosecution of claims to address violations of New York's Human Rights Law and to vindicate the public interest in preventing unlawful discrimination. (*Id.* at 13–15.)

The court also found the decision in *Joulé, Inc. v. Simmons*, 944 N.E.2d 143 (Mass. 2011), to be instructive. (Doc. 29 at 15.) The court reasoned that the Massachusetts Commission Against Discrimination (MCAD) procedure for investigating discrimination complaints "closely resembles NYSDHR's procedure." (*Id.*) The court noted that the procedures applicable to both MCAD and NYSDHR allowed the individual complainant to intervene as a party, and agreed with the *Joulé* court that intervention would require a complainant to advance a discrimination claim in her own name, and that an attempt to do so would contravene the arbitration provision requiring resolution of disputes through arbitration. (*Id.* at 16–17.) The court concluded that, as long as Ms. Derfert did not seek to intervene as a party in the NYSDHR proceeding, the Arbitration Agreement would not bar that proceeding.

Charter argues that the court incorrectly concluded that Ms. Derfert would have to "intervene" as a party in the NYSDHR proceeding to exercise control over the case. (Doc. 31-1 at 7.) Charter maintains that Ms. Derfert already *is* a party to the NYSDHR proceeding, and that therefore the case in the NYSDHR is her case and she is advancing a discrimination claim there in her own name in contravention of the Arbitration Agreement. The court considers Charter's arguments in turn.

### A.   N.Y. Exec. Law § 292(17)

Charter contends that Ms. Derfert is by definition a party to the NYSDHR proceeding under N.Y. Exec. Law § 292(17). NYSDHR does not cite § 292(17) in its opposition to Charter's motion but maintains that the court has already considered the statutory and regulatory procedures. (*See* Doc. 33 at 3.) Charter replies that the plain text of § 292(17) shows that Ms. Derfert is already a party. (Doc. 36 at 6.) At oral argument, counsel for NYSDHR argued that it is immaterial whether Ms. Derfert is a "party" under § 292(17).

4

The court did not discuss § 292(17) in its January 4, 2021 Order. Charter cites that provision for the first time in its reconsideration motion. The court considers it here. Section 292 contains definitions of terms used in New York's Human Rights Law. Subsection 17 provides: "The term 'parties to the proceeding' means the complainant, respondent, necessary parties and persons permitted to intervene as parties in a proceeding with respect to a complaint filed under this article." N.Y. Exec. Law § 292(17). There appears to be no dispute that—as the court previously found—Ms. Derfert is the "complainant"; she filed a complaint with NYSDHR and is listed as the "Complainant" in the caption of that complaint. (*See* Doc. 29 at 3.) Under § 292(17), therefore, she is one of the "parties to the proceeding" in the NYSDHR.

Charter contends that Ms. Derfert, as a "party" to the NYSDHR proceeding under § 292(17), has "significant procedural rights and control of the administrative process" and that "[i]t is her claim, not the Division's, that will be adjudicated" at any hearing before an NYSDHR administrative law judge (ALJ). (Doc. 36 at 6.) The court agrees that under § 292(17), Ms. Derfert is a "party" to the NYSDHR proceeding because she is the complainant. But Ms. Derfert's "party" status under § 292(17) does not necessarily mean that the NYSDHR proceeding is a discrimination claim in Ms. Derfert's name rather than "an enforcement action in [NYSDHR's] own name." *Preston*, 552 U.S. at 359 (citing *Waffle House*). As the court previously concluded, it is necessary to focus "on the function that the agency is performing." (Doc. 29 at 15.) The court reviewed NYSDHR's functions in the January 4, 2021 Order, and considers the relevant additional points on that issue in the analysis below.

5

B.  **Human Rights Law Regulations**

The court reviews the regulations that Charter cites for its argument that Ms. Derfert has such "*significant* authority to control the administrative process" that the claim before NYSDHR is hers and not the Division's. (Doc. 31-1 at 6.) NYSDHR lists the following rights that Ms. Derfert has under the applicable regulatory provisions:

- To withdraw the complaint (9 NYCRR § 465.5(a));
- To amend the complaint (9 NYCRR § 465.4(b));
- Through an attorney, to access the file and make copies of documents (9 NYCRR § 465.13(e));
- To present the case through her private attorney (9 NYCRR § 465.13(h));
- Through an attorney, to issue subpoenas or subpoenas *duces tecum* (9 NYCRR § 465.14(d));
- Through an attorney, to present testimony and cross-examine witnesses (9 NYCRR § 465.12(b)(1));
- To participate in depositions (9 NYCRR § 465.12(e)(12)); and
- To move for disqualification of the ALJ (9 NYCRR § 465.12(d)(3)).

NYSDHR maintains that Charter presented several of these regulatory provisions in briefing prior to the January 4, 2021 Order, and that the court already considered the statutory and regulatory procedures. (Doc. 33 at 4–5.)

Under the Human Rights Law and regulations, complainants may elect to exercise a variety of rights and play a more active role in the process than that of a mere observer or interested person. The court reviews below each of the complainant's rights that Charter highlights. The court concludes that a complainant's rights in a NYSDHR proceeding are indeed

6

significant. But Charter does not argue that the Arbitration Agreement precludes NYSDHR from acting during the investigation stage of the process; the complainant's rights during that stage do not impinge on the Arbitration Agreement. Moreover, once an investigation proceeds to the "public hearing" stage, NYSDHR is "in command of the process." *Waffle House*, 534 U.S. at 291.

### 1. Right to Withdraw or Amend the Complaint

The complainant's right to withdraw the complaint ends at the time that notice of a hearing is served, and even if the complaint is withdrawn, the Division retains the right to file a complaint on its own motion based on the same facts. *See* 9 NYCRR § 465.5(a) ("A pending complaint, or any part thereof, may be withdrawn by the complainant at any time before the service of a notice of hearing. Such a withdrawal shall be in writing and signed by the complainant. Such withdrawal does not preclude the division from filing a complaint on its own motion based on the same facts."). Similarly, the complainant has a right to amend the complaint, but once a "public hearing" is commenced, the right to amend is curtailed as subject to the ALJ's discretion. *See* 9 NYCRR § 465.4(b) ("The division or the complainant shall have the power reasonably and fairly to amend the complaint. No party may be removed by any amendment. After a hearing is commenced before an administrative law judge, any amendment is subject to the discretion of the administrative law judge.").

### 2. Right to Access the File

The complainant has a right to access the file and make copies. *See* 9 NYCRR § 465.13(e) ("The complainant's and respondent's attorneys shall have full and complete access to the file, and to copies (at reasonable cost) of documents necessary to the hearing, at an office

maintained by the division convenient to such attorney, by appointment."). But that is not a power to control the proceedings.

### 3. Right to Move for ALJ Disqualification

Section 465.12(d)(3) of 9 NYCRR provides:

> If a party files a timely and sufficient affidavit of personal bias or disqualification of an administrative law judge, the matter shall be referred to the chief administrative law judge, who shall permit other parties to submit affidavits, and then shall determine the matter upon such affidavits. If an affidavit is submitted to disqualify the chief administrative law judge, the matter shall be referred to the executive deputy commissioner for determination. Any such determination shall be made part of the record in the case.

A complainant's right to move for an ALJ's disqualification is a significant procedural right. But the power to move for such disqualification has nothing to do with the merits of the proceeding, and since all parties enjoy this power, it does not put the complainant in "command" of the process.

### 4. Evidence and Presentation of the Case

Charter references several provisions recognizing a claimant's right to be involved in the evidentiary process of the NYSDHR proceeding and to participate in the presentation of the case to the ALJ. In its January 4, 2021 Order, the court recognized that, at the public hearing, "[t]he case in support of the complaint shall be presented by one of the attorneys or agents of the division and, at the option of the complainant, by his or her attorney" and that "[w]ith the consent of the division, the case in support of the complaint may be presented solely by his or her attorney." N.Y. Exec. L. § 297(4)(a). The applicable regulations are in accord. *See* 9 NYCRR § 465.13(d)(2) ("If the complainant is represented by an attorney, such attorney

shall solely present the case in support of the complaint on the consent of the division attorney.").[1]

The court begins with Charter's reliance on 9 NYCRR § 465.13(d)(1), which states: "If the complainant is not represented by an attorney, the case in support of the complaint shall be presented before the administrative law judge by the division's agent or attorney." Charter suggests that this language indicates that the Division "does not present the case in support of the Division or the case in support of the public interest but instead presents 'the case in support of the complaint.'" (Doc. 31-1 at 8.) The better interpretation, in the court's view, is that the Division presents the case *both* in support of the complaint *and* in support of the public interest. It is unnecessary to read the regulations to be at odds with the purpose of the Human Rights Law as stated in the statute: to rectify violations of New York's Human Rights Law and vindicate the *public interest* in preventing discrimination that impinges on "the rights and proper privileges" of New Yorkers, "the institutions and foundations of a free democratic state," and the "peace, order, health, safety and general welfare of the state and its inhabitants." N.Y. Exec. L. § 290(3).

More generally, Charter cites several regulations that are consistent with the complainant's right to participate in the presentation of the case through an attorney. The

---

[1] *See also id.* § 465.13(h):

(1) Where the division attorney determines that there exists a substantial public interest or an important or novel issue of law, the division attorney shall appear at the hearing.

(2) In such case, the division attorney and complainant's attorney may agree on the procedure to be followed in the presentation of the case, including joint presentation by such attorneys.

(3) The division attorney may at any time withdraw the consent to have the case presented solely by the complainant's attorney, and appear at the hearing or submit arguments or briefs.

regulations cited above acknowledge that the Division cannot exclude a complainant's attorney from involvement in the presentation of the case to the ALJ. But the complainant also cannot exclude the Division, which retains discretion to withdraw consent for the claimant's attorney to be the sole prosecutor of the case, and also retains the right to appear through the Division's own attorney at the proceedings.

In short, the Division has authority to designate the claimant's attorney as the Division's agent for the purpose of presenting the case to the ALJ. A similar feature was present in the MCAD process the *Joulé* case—cited above and discussed below—but that fact did not prevent that court's conclusion that the MCAD was empowered to investigate and resolve discrimination complaints even where the complainant had signed an arbitration agreement. *See Joulé*, 944 N.E.2d at 148 ("The case is prosecuted by an MCAD attorney or other staff member, or in some instances by the complainant's attorney whom the MCAD has designated its agent for the purpose."). The other regulations that Charter cites are all powers that a claimant's attorney—acting as the Division's agent—would need to carry out the prosecution of the case. *See* 9 NYCRR §§ 465.12(b)(1) (present testimony and cross-examine witnesses); 465.12(e)(12) (depositions); 465.14(d) (subpoenas).

C. **NYSDHR's "Basic Guide"**

In addition to the Human Rights Law regulations, Charter also refers to guidance appearing in a "Basic Guide" that NYSDHR has produced. (*See* Doc. 31-1 at 8–9.)[2] Charter

---

[2] The "Basic Guide" is available at https://dhr.ny.gov/sites/default/files/pdf/nysdhr-basic-guide-hrl.pdf (last visited Feb. 24, 2021). Charter highlights a variety of statements in the Basic Guide, including the following: "The New York State Division of Human Rights was established as an alternative to the court system. Division staff specialize in enforcing the Human Rights Law and will assist you in your complaint from investigation through the hearing process (if there is one)—and will do so free of charge. . . ." *Id.*

10

contends that this guidance indicates that "while the Division *assists* individuals who file complaints, including providing attorneys to *assist* those individuals during the administrative hearing, the complaints are brought by the *individuals*, not the Division." (*Id.* at 9.) NYSDHR disagrees, arguing that N.Y. Exec. L. § 295(12) requires NYSDHR "[t]o furnish any person with such technical assistance as the division deems appropriate to further compliance with the purposes or provisions of this article" and that NYSDHR's capacity to provide assistance "does not alter NYSDHR's statutory obligation to prosecute complaints of discrimination pursuant to its statutory procedures." (Doc. 33 at 7.)

The court agrees with NYSDHR on this point. The assurance that the Division will offer assistance to complainants does not mean that the Division's role is to "assist" the complainant in the prosecution of a discrimination case in the complainant's name. Since the complainant has numerous rights in the process, as discussed above, the Division's offer of assistance is consistent with N.Y. Exec. L. § 295(12) and may be necessary to individuals who are unfamiliar with those rights. Moreover, the Basic Guide is plainly designed to be accessible for individuals who are unfamiliar with NYSDHR proceedings. References to the NYSDHR proceeding as "your case" are designed to make the Basic Guide understandable at the possible expense of fully explaining the nature of the Division's role and the proceedings. Ultimately, the Basic Guide is only guidance; it does not alter the legal structure of the statutes and regulations as discussed above and in the January 4, 2021 Order.

**D.** *Joulé*

Finally, Charter argues that the *Joulé* case supports its position, not the Division's. (Doc. 31-1 at 10.) Charter maintains that the administrative process in Massachusetts at the time *Joulé* was decided was fundamentally different from the NYSDHR process with respect to a

complainant's right to participate. (*Id.* at 11.) And according to Charter, the court's January 4, 2021 Order was premised "on the belief that the Division and Charter were the only parties to the administrative proceeding and that Derfert, if she wished to participate in the proceeding, would need to intervene." (Doc. 36 at 6.) Charter has also raised arguments about the relief that might be ordered in an NYSDHR proceeding.

### 1. Differences Between MCAD and NYSDHR Process

Charter correctly points out that the administrative process applicable to the MCAD at the time of the *Joulé* decision is not exactly the same as the process before the NYSDHR. (*See* Doc. 31-1 at 11.) One such difference is that in the MCAD procedure, the "Investigating Commissioner" would issue a "complaint in the name of the MCAD" upon determining that the public interest required certification of the issues to a public hearing. *See* 804 Code Mass. Regs § 1.20(3) (2004). The court previously declined to distinguish *Joulé* based on that difference (Doc. 29 at 17–18) and holds to that analysis here.

Charter also contends that, under the MCAD procedure, a complainant's attorney could participate in the case *only* if "the MCAD has designated [the attorney as] its agent for the purpose" of prosecuting the case. *Joulé*, 944 N.E.2d at 148 (citing 804 Code Mass. Regs. § 1.09(5)(a), (b) (1999)). The relevant provisions of that regulation are as follows:

> (5) Representation by Counsel.
>
> (a) The case in support of the complaint shall be presented before the Commission by one of its attorneys or agents, or, at the discretion of the Commission, by an attorney retained by the complainant. . . .
>
> (b) The determination as to whether or not to assign Commission counsel in a matter before the Commission shall be made at the discretion of the General Counsel . . . . In cases where the complainant has retained private counsel, the General Counsel may appoint Commission counsel to remain involved in the proceedings for purposes of representing the Commonwealth's interest . . . or, may allow private counsel to also act as an agent of the Commission for purposes of presentation of the complaint at public hearing. . . .

12

804 Code Mass. Regs. § 1.09(5)(a), (b) (1999).

Charter interprets the "or" in subsection 5(a) as "exclusive"—i.e., as meaning that the case in support of the complaint is presented by Commission counsel or the claimant's attorney but not both.[3] That would give MCAD somewhat more control over the case that NYSDHR would have since, as discussed above, NYSDHR cannot exclude a complainant's attorney from involvement in the presentation of the case to the ALJ. The court concludes, however, that this difference is not sufficient to distinguish *Joulé*. As noted above, the complainant also cannot exclude the Division, which retains discretion to withdraw consent for the claimant's attorney to be the sole prosecutor of the case and also retains the right to appear through the Division's own attorney at the proceedings.

    **2.**     **Relief**

Charter also refers to the issue of the relief that NYSDHR might order. At the March 4, 2021 hearing, counsel for the Division indicated that the relief sought in NYSDHR proceedings can include relief specific to the complainant, such as lost wages, compensation for pain and suffering, and punitive damages. Indeed, as the court noted in the January 4, 2021 Order, if the NYSDHR ALJ determines that the respondent engaged in an unlawful discriminatory practice, the ALJ may require the respondent to "cease and desist from such unlawful discriminatory practice" and may grant relief specific to the complainant such as "hiring, reinstatement or upgrading of employees, with or without back pay," and may award compensatory or punitive damages to the aggrieved person. N.Y. Exec. L. § 297(4)(c). Charter argues that, since such

---

[3] The current regulations are explicit on this point: "A complainant may have private counsel notwithstanding the assignment of one of the Commission's attorneys to a case, although in such case counsel for the Commission has *exclusive* authority to present the case in support of the complaint and represent the public interest." 804 Code Mass. Regs. § 1.15(6) (emphasis added).

complainant-specific relief would have res judicata effect, it would deprive Charter of its right to arbitrate.

In responding to this argument, the court returns to the *Waffle House* decision. Both the majority opinion and the dissent recognized that the relief which the EEOC sought functioned as victim-specific compensation for the employee's losses. They differed over the res judicata effect of an administrative ruling. The majority wrote, "[i]t is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek." *Waffle House*, 534 U.S. at 297. Since the employee in *Waffle House*—like Ms. Derfert here—had neither sought to arbitrate her claim or settle it, the issue was purely theoretical. In dissent, Justice Thomas outlined his view that the EEOC would not bar a separate arbitration by the employee: "If the EEOC indeed is 'the master of its own case,' I do not see how an employee's independent decision to pursue arbitral proceedings could affect the validity of the 'EEOC's claim' in court." *Id.* at 309–10 (Thomas, J., dissenting) (internal citation omitted).

The court sets out this disagreement over an issue which was theoretical both in *Waffle House* and here to make a broader point. District courts are bound to follow the decisions of the United States Supreme Court. Charter may prefer the outcome of the dissent, but the court is obligated to follow the majority ruling. The differences between *Waffle House* and this case are not material to the enforceability of the arbitration clause. These include the role of the EEOC and the Division in enforcing civil rights protections by recovering "make whole" damages for individual employees, the broad authority conferred upon both agencies to investigate and address particular violations, and the role of both agencies as advocates before a neutral forum. The court is not free to follow the dissent in *Waffle House* and enjoin a state administrative

14

proceeding because of an argument about res judicata which a majority of the Supreme Court has already considered and rejected.

In bringing this discussion to a conclusion, the court looks to the function of the New York Human Rights Law and the Division in addressing cases of discrimination. The law has been in effect since 1945. It predates by two decades the federal efforts to establish an administrative agency to address discriminatory behavior. Attempts to contract out of such basic and essential statutory protections rarely meet with the courts' approval. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) ("[I]f certain terms of an arbitration agreement served to act 'as a prospective waiver of a party's right to pursue statutory remedies . . ., we would have little hesitation in condemning the agreement as against public policy.'" (alteration in original; quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985))). Fortunately, in this case, there is no need to go so far as to strike the arbitration clause. It remains fully enforceable against Ms. Derfert. But it does not constrain the Division, which has identified her case as one in which probable cause is present and in which it seeks to recover relief, primarily victim-specific, in order to enforce New York's civil rights laws.

### 3. Intervention

The *Joulé* court found that the arbitration provision that the complainant signed barred her from being a "litigant or party to the MCAD proceeding" beyond filing a complaint with the MCAD. *Joulé*, 944 N.E.2d at 151. The *Joulé* court reasoned that if the complainant sought to intervene as a party, she would be required to "certify her 'allegations of discrimination'" and would effectively be "advanc[ing] a claim of discrimination in her own name," which the arbitration agreement barred. *Id.* Finding the *Joulé* decision persuasive, this court held that

15

Charter could renew its request to halt the NYSDHR proceedings if Ms. Derfert sought to "intervene" as a party in those proceedings. (Doc. 29 at 22.)

Regarding Charter's argument about the issue of a complainant's intervention, the court understands that, under N.Y. Exec. Law § 292(17), Ms. Derfert is already a "party to the proceeding" before the Division. *See supra* Section II.A. Thus the court's suggestion that the outcome might be different if Ms. Derfert sought to intervene as a party was unnecessary. But the court is not persuaded that its judgment was erroneous.

Charter argues that *Joulé* holds that a valid arbitration agreement bars a complainant from intervening to testify in an MCAD proceeding. The court agrees that *Joulé* held that the complainant in that case could not intervene without certifying her "allegations of discrimination" because doing so would "in essence" require the complainant to advance a claim of discrimination "in her own name." *Joulé*, 944 N.E.2d at 151. But the *Joulé* court did not hold that a complainant is barred from testifying. *See id.* ("Nothing in the arbitration provision prevents her from testifying before the MCAD . . . ."). Instead, the *Joulé* court focused on the requirements of 804 Code Mass. Regs. § 1.20 (2004), which required complainant-intervenors to "certify" their "allegations of discrimination." *Joulé*, 944 N.E.2d at 151 (quoting 804 Code Mass. Regs. § 1.20 (2004)). No similar certification requirement appears in the NYSDHR procedures.

Moreover, as the court previously concluded, "[t]he teachings of *Waffle House* and *Preston* indicate that the court must focus on the function being performed." (Doc. 29 at 18.) The court's review of the functions that the Division performs confirms that, although the complainant is one of the parties to the proceeding under N.Y. Exec. Law § 292(17), the

Division is "in command" of the administrative process set forth in the Human Rights Law. *Waffle House*, 534 U.S. at 291.

## Conclusion

Charter's Motion for Reconsideration (Doc. 31) is DENIED.

Charter's Motion to Enjoin (Doc. 38) the Division and Ms. Derfert from continuing with the NYSDHR proceedings until the court rules on the reconsideration motion is DENIED as moot. Denial of the Motion to Enjoin is without prejudice to a motion under Fed. R. App. P. 8, which the court will consider promptly if Charter files an appeal.

Dated this 10th day of March, 2021.

Geoffrey W. Crawford, Judge
United States District Court